WILLIAM B. BROOKS *vs.* EUGENE A. BENHAM ET AL.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A debt fully secured by mortgage upon a tract of land which is after-
wards divided and sold in several parcels at one time to different
purchasers, should, as between them, be so apportioned that each
parcel will bear its fair share of the whole debt. The mortgagee
ought not to release his security as to any parcel in such a manner
as to increase the burden on the rest ; and if he, with notice of the
conveyances out of which the purchasers' equities arise, sees fit to
release any parcel for less than its full share of the whole debt, he
will, nevertheless, be chargeable in equity with the receipt of that
share, in favor of the owners of the other parcels, in a suit to fore-
close the mortgage.

An oral offer by a mortgagee, at an auction sale of the mortgaged prem-
ises, to let certain sums "remain" on each parcel of the tract sold,
does not constitute an apportionment of the mortgage incumbrance.
Unless accepted, such offer amounts to nothing ; and if accepted it
can be made obligatory, in view of the statute of frauds, only by
conveyances between the parties.

An apportionment of the mortgage incumbrance made between the
mortgagee and purchasers of certain parcels of the mortgaged tract,
cannot affect purchasers of other parcels who were not consulted
and gave no consent.

At common law and by the general principles of equity, a mortgage
debt is not satisfied by the mere acceptance of a conveyance of the
equity of redemption in a part of the mortgaged premises.

If the time limited for redemption expires pending an appeal to this
court, the trial court has jurisdiction to modify its decree and fix a
new law day.

[Submitted on briefs October 27th—decided November 30th, 1897.]

SUIT to foreclose two mortgages, brought by appeal to the
Superior Court in New Haven County where judgment was
rendered, *G. W. Wheeler, J.*, for the plaintiff, from which the
defendants appealed for alleged erroneous rulings. *No error.*

The report of the committee which was accepted by the
court, stated the following facts :—

Eugene A. Benham, in 1886, to secure his note for $4,500

mortgaged a ten acre tract of land in Waterbury to the plaintiff. It had been mapped out into 28 building lots, and shortly after the mortgage the map was recorded in the Waterbury land records. A street called Benham street was marked on the map, on which some of the lots were bounded. This street was never accepted by vote of the town, but houses were afterwards built along it, and it was used as a highway. The plaintiff afterwards released three of the lots to the mortgagor, describing them as bounded on Benham street or "a new street." In 1890, the defendant, to secure another note for $1,800, mortgaged the residue of the tract to the plaintiff. The land covered by this second mortgage was then worth $10,220. A few months later the plaintiff released two more lots worth $975, to Benham, who thereupon paid him $500, in reduction of the second mortgage.

In 1892, Benham made an assignment in insolvency, and the trustee sold his equity of redemption at auction, having first endeavored, without success, to induce the plaintiff to apportion the amount due him among the several lots. The plaintiff attended the auction, at which the equity in each lot or group of lots was sold separately, and named to the auctioneer, as each lot or group of lots was put up, the amount which he was willing to allow to remain on that land if the purchaser desired, which sums the auctioneer thereupon stated to those present. These sums amounted in all to $6,700, which was a little more than was then due the plaintiff; his intention in fixing the amount being to make his security good and avoid a redemption of the property. The auctioneer did not state the total amount due on the mortgages, and there was no promise, express or implied, on the part of any purchaser to pay them or any part of them. They were on record, and the deeds to each purchaser described his lot as subject to several mortgages which fully appeared of record. The value of each lot is as hereinafter stated, and has remained the same from the sale of the first mortgage to the present time.

The sum which it was stated could remain on Lot 1 was $3,000. This lot was only worth $2,300, and the equity was

bought in for -$1 in behalf of Benham, and conveyed by the purchaser to Mrs. Benham. Lot 2 was worth $600, and it was stated that $500 would remain on it. The purchaser afterwards sold it to Mrs. Benham.

In 1893 and 1894, the plaintiff released his lien on 16 of the lots to their respective purchasers, on their paying to him the several amounts which the auctioneer had stated could remain on them respectively. He also took in 1894 from the purchasers of 5 other lots quitclaim deeds of their title, and several months afterwards gave to each his bond to sell and convey his lot to him for the amount which the auctioneer had stated could remain on it. From the purchaser of each of the other lots, the plaintiff received either the amount which it had been so stated could remain upon it or a convey-. ance of the equity as payment of said amount.

The sums which it was stated by the auctioneer could remain were as follows: Lots 1, $3,000; 2 and 3, $500, each; 5, 7, 9, 11 to 18 inclusive, 24 and 25, $150 each; 19, 20, 22, 26, 27, 28, together, $500.

Mr. and Mrs. Benham were the sole defendants. The complaint, after reciting the original mortgages, stated that she had received a conveyance of lots 1 and 2, and that on all the remainder of the land originally mortgaged, the mortgages had been released or the amount due thereon paid.

She filed a cross-complaint, alleging that both mortgages had been fully paid off before Benham's insolvency, and that the plaintiff had taken possession of all the lots except those owned by her, and from proceeds of sales and rents had received more than his mortgage debts. She claimed an account and a release, if the plaintiff had been thus paid in full, and if not, a release on his paying such proportion of the remaining indebtedness as the value of her lots bore to the value of all the land mortgaged.

The report left it for the court to determine whether, upon the foregoing facts, what was said and done at the auction sale constituted an apportionment of the mortgage incumbrances, binding upon the defendant.

The court held that Benham street had been released from

any mortgage liens by the acts of Benham and the plaintiff in dedicating it to public use ; that there was no apportionment at or before the auction sale; that each lot must bear its proportional part of the mortgage indebtedness, those released bearing their part as it might exist at the time of the release ; that the several payments to the plaintiff, for each release, must be applied in reduction of his mortgage debt, and if less than the proportional part of that debt which they ought, in view of their real value, to have borne, that he should be charged enough more to make up the deficiency ; and that when the plaintiff secured the equity in certain of the lots without the consent of the owners of the equities in the other lots, he by his conduct released the remaining lots from the burden of the mortgages to the extent of the then value of those lots which he himself obtained, and the remaining lots were to be charged only with the balance thereafter remaining due under the mortgages.

Judgment was therefore rendered for the plaintiff, fixing the amount of his mortgage debts at \$2,087.55, ascertained as follows : The land mortgaged was worth, at the date of Benham's insolvency, \$10,220—\$975=\$9,245. There was then due on the mortgages, exclusive of accrued interest, \$4,500+\$1,800—\$500=\$5,800. Lots 6 and 8 were released August 22d, 1893, on receipt of \$400. They were worth \$700. At that date the mortgage debt, including interest accrued, was \$6,371.30. Therefore these lots were then equitably subject to a part of the debt $(=x)$ proportioned to the ratio between their value (\$700) and the value of all the lots mortgaged. This proportion is thus stated: $x : \$6,371.30 : : \$700 : \$9,245$. The part of the debt thus ascertained (\$482.41) being charged against the plaintiff, his debt was reduced not simply by the \$400 which he in fact received, but by the \$82.41 additional, to which these two lots, as related to the rest of the mortgaged lands, were equitably subject.

The mortgage lien existing after this transaction on August 22d, 1893, was therefore for \$6,371.30—\$482.41=\$5,888.89, and the value of the lots on which it rested was \$9,245—\$700=\$8,545. Lots 11 and 13 were released September 5th,

1893, on receipt of $300. They were worth $500. The mortgage debt, including interest, was then $5,903.63. The proportional burden of this debt resting on these lots ($= x$), ascertained by the same rule (x : $5,903.64 : : $500 : $8,545), was $345.44, or $45.44 more than the sum paid. The plain-. tiff was therefore charged with $345.44, which left his debt $5,558.19, resting upon lots worth ($8,545—$500)=$8,045.

Similar rests and computations were made for each succes-sive payment and release, and the lots to which the plaintiff acquired the absolute title in 1894 were charged against him at their full value, which exceeded what would then have been their proper contributory share of the mortgage debt.

The following claims of the defendants were overruled by the court: That the plaintiff's mortgages have been appor-tioned among the several lot owners, and therefore nothing remained due on these mortgages ; that the releasing of any of the lots was an apportionment of the mortgages, and therefore nothing remained due on these mortgages ; that the release of one or more of these lots without an appraisal as provided by the statutes was equivalent to and was in fact a foreclosure of these mortgages upon that lot or parcel, and therefore noth-ing remains due on these mortgages ; that the value of the lots thus foreclosed or appropriated by the plaintiff should be charged to the plaintiff in reduction of his two mortgages , that Benham street was not released from the burden of either mortgage, and its value should be taken into account in ap-portioning said two mortgages; that judgment ought to be rendered for the defendant.

*Charles W. Gillette* and *John O'Neill,* for the appellant (defendant).

*Frederick M. Peasley,* for the appellee (plaintiff).

BALDWIN, J. He who takes a mortgage of several parcels of land, which together are worth more than the amount of his debt, and are subsequently sold by the owner of the equity of redemption, at the same time, to different persons, owes a

Brooks *v.* Benham et al.

certain duty to each of these. He ought not to release his security as to any parcel in such a manner as to increase the burden on the rest. He has no right, without the consent of all, to bargain with any of these purchasers for the release of his parcel, on payment of less than its fair share of the whole debt. While the whole of the debt is secured by the whole of the land, each parcel of the land, as between the different proprietors, is equitably subject only to so much of the debt as corresponds to the proportion between its value and the value of all the land ; and if its owner should be compelled to redeem the mortgage, he can resort to the others for a ratable contribution, and for that purpose is entitled to the benefit of subrogation to the mortgage title. To release any particular parcel from the mortgage incumbrance is to make, as respects that, any such subrogation impossible. The mortgagee therefore releases at his peril, if he had notice of the conveyances out of which the equities in question arise ; and if he does so without receiving from the releasee his proper contributory share of the debt, he is still equitably chargeable with the receipt of that share, in favor of the owners of the remaining parcels. *Stevens* v. *Cooper*, 1 Johns. Ch. 425. It was this position which the plaintiff occupied with relation to the defendants, and the decree appealed from correctly enforces their resulting equities.

It was properly held by the Superior Court that what was said and done at the auction sale did not constitute an apportionment of the mortgage incumbrances. An oral offer was made to let certain sums "remain" on each parcel sold ; but such offers amounted to nothing unless accepted, and then could only be made effectual by future conveyances between the parties. It appears that no offer was accepted at the time of the sale, nor, in view of the statute of frauds, would such an acceptance have created an actionable obligation.

The dealings of the plaintiff with certain of the purchasers after the sale, and the resulting conveyances, constituted an apportionment as between him and them ; but could not operate to the prejudice of the defendants, who were not consulted and gave no consent.

The defendants claim that the plaintiff's release of certain of the lots, upon payment of part of the mortgage debt, was equivalent to a foreclosure, and therefore paid the whole debt.

The ancient law of this State was that when a strict foreclosure became absolute, this appropriation of the land extinguished the obligation of the mortgagor, and under our present statutes a similar result may now follow, under certain conditions. *Ansonia Bank's Appeal,* 58 Conn. 257. But these statutes deal only with judicial foreclosures. Such proceedings afford an opportunity to settle all matters of controversy growing out of the mortgage indebtedness, and it is only when the plaintiff does not choose to avail himself of this opportunity that he is debarred from any further recovery in subsequent proceedings. Transactions between the mortgagor and mortgagee out of court, are left to be regulated by the common law and the general principles of equity. Under these a mortgage debt is never satisfied by the mere acceptance of a conveyance of the equity of redemption as to part of the security.

The acceptance by the plaintiff, in February, 1894, of conveyances of the equities of redemption in five of the lots sold by the trustee in insolvency extinguished the lien of the mortgage upon them, and they were properly charged against him by the Superior Court, in stating the account between him and the defendants, at $1,800, which was their market value, although that exceeded their ratable contributory share of the total indebtedness then existing. His agreement, made six months later, to sell them for what he had promised should "remain" upon them, amounting in all to $1,100, cannot affect the fact that he had previously discharged them from the mortgage lien, and appropriated them fully to his own use, without obtaining the defendant's consent.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.

At the opening of the next term of this court (January

term, 1898), an oral motion was made by counsel for the appellants for an order directing the Superior Court to enlarge the time limited for redemption in its original decree of foreclosure, which time expired pending the appeal, and before the judgment of this court was announced.

*John O'Neill*, for the motion, stated that the clerk of the Superior Court had issued an execution of ejectment upon the original decree, and that he had submitted to the Superior Court a motion for its recall, which was pending undecided.

*Frederick M. Peasley*, for the plaintiff, urged that the defendants should have tendered the sum found due, or paid it into court, before the law day expired.

PER CURIAM. The Superior Court has jurisdiction to modify its judgment, in respect to the limit of time fixed for redemption, and to the stay of execution.

This court cannot assume, upon this motion, to control the exercise of such jurisdiction.