Clement H. WEBB and Mary Ellen Webb, Appellants,

v.

Phil R. HARRINGTON and Paul A. Christiansen, Respondents.

HOLLIE DEVELOPMENT COMPANY, a Missouri Corporation, Appellant,

v.

Paul CHRISTIANSEN, Defendant-Respondent,

and

Clement H. Webb and Mary Ellen Webb, Defendants-Appellants.

Nos. KCD 25730, 26264.

Missouri Court of Appeals, Kansas City District.

Sept. 4, 1973.

Motion for Rehearing and/or Transfer Denied Nov. 5, 1973.

Application to Transfer Denied Jan. 14, 1974.

Rufus B. Burrus, Independence, W. Raleigh Gough, Kansas City, for appellants Clement H. and Mary Ellen Webb.

Alan B. Slayton, Independence, for Paul Christiansen.

Before DIXON, C. J., PRITCHARD and SOMERVILLE, JJ., and DONALD B. CLARK, Special Judge.

SOMERVILLE, Judge.

By agreement of counsel both of the above cases were consolidated for argument and submission on appeal.

Case No. 26264 will hereinafter be referred to as the Hollie case and case No. 25730 will hereinafter be referred to as the Webb case. A slight degree of prolixity, at best, appears unavoidable in resolving these cases on appeal due to the numerous transactions and highly complicated facts involved.

The Hollie case was filed first in the lower court. Approximately thirty days later, the Webb case was filed.

With reference to the Hollie case, Hollie Development Company, Clement H. Webb and Mary Ellen Webb, collectively (unless specifically designated), will hereinafter be referred to as appellants and Paul A. Christiansen (unless specifically designated) will hereinafter be referred to as respondent. With reference to the Webb case, Clement H. Webb and Mary Ellen Webb, collectively (unless specifically designated), will hereinafter be referred to as the Webbs, and Phil R. Harrington and Paul A. Christiansen, collectively (unless specifically designated), will hereinafter be referred to as Christiansen.

The Hollie case is an equitable action to have five separate warranty deeds declared equitable mortgages; further, that the court ascertain the amount of indebtedness owing under each purported equitable mortgage, and, upon payment of the ascertained amounts by Hollie Development Company to respondent, respondent be ordered to reconvey to Hollie Development Company the real property described in the five separate warranty deeds.

Clement H. Webb and Mary Ellen Webb were joined as third party defendants in

the Hollie case. In the Hollie case respondent Christiansen counterclaimed (1) seeking ejectment and possession of all the real property described in the five separate warranty deeds, (2) that he be adjudged the owner in fee simple absolute of all the real property described in the five separate warranty deeds, and, further, (3) that he have judgment for moneys advanced for completion of the development of Pleasant View Estates. Christiansen's counterclaim in respect to (3) was dismissed before the transcript on appeal was filed.

The Webb case sought judicial determination of the total amount of outstanding indebtedness due and owing under a note and to enjoin the trustee of a deed of trust given to secure payment from proceeding with foreclosure until the Webbs were given an opportunity to discharge the amount judicially determined.

The five warranty deeds involved in the Hollie case separately conveyed real property hereinafter referred to, descriptionwise, as Tract One (referred to in the evidence as the Lake Lotawana property), Tract Two (referred to in the evidence as the eleven acre tract), Tract Three (referred to in the evidence as nine plus acres), Tract Four (referred to in the evidence as less than four acres), and Tract Five (referred to in the evidence as Lots Three, Four, Five, Six and Tract A, Pleasant View Estates, and a tract 111.04 feet by 140 feet north of Pleasant View Estates).

Tracts Two, Three, Four and Five originally comprised an undeveloped thirty-two acres of real property in the eastern part of Jackson County, owned by Clement H. Webb. On June 22, 1960, Clement H. Webb and Mary Ellen Webb, husband and wife, executed a deed of trust regarding the thirty-two acre undeveloped tract, wherein Phil R. Harrington was trustee and Charles A. Risinger and Alta A. Risinger were beneficiaries, to secure payment of a certain promissory note dated June 22, 1960, in the principal amount of Ten Thousand and no/100 Dollars ($10,000.00), with interest thereon at the rate of six per cent per annum, interest payable semi-annually, and Five Hundred and no/100 Dollars ($500.00) payable on the principal on each interest payment date, with Clement H. Webb and Mary Ellen Webb as makers and Charles A. Risinger and Alta A. Risinger as payees. This note and deed of trust will hereinafter be referred to as the Risinger note and deed of trust.

On some unknown date, but in any event subsequent to June 22, 1960, and prior to February 10, 1961, Clement H. Webb and Mary Ellen Webb conveyed the undeveloped thirty-two acre tract of real property to Hollie Development Company, a Missouri corporation, subject to the Risinger note and deed of trust.

Sometime prior to February 10, 1961, Hollie Development Company apparently obtained title to Tract One (the Lake Lotawana property). On February 10, 1961, Hollie Development Company executed a deed of trust regarding Tract One (the Lake Lotawana property), wherein Gladys Christiansen, mother of respondent Christiansen, was beneficiary, to secure payment of a certain promissory note dated February 10, 1961, in the principal amount of Eight Thousand Five Hundred and no/100 Dollars ($8,500.00), with interest thereon at the rate of seven per cent per annum, interest payable semiannually, and Five Hundred and no/100 Dollars ($500.00) payable on the principal on each interest payment date, with Hollie Development Company as maker and Gladys Christiansen as payee. This note and deed of trust will hereinafter be referred to as first Christiansen note and deed of trust.

In 1966 Hollie Development Company subdivided and platted as Pleasant View Estates that part of the undeveloped thirty-two acres not described in Tracts Two, Three and Four.

Sometime in 1966 (although the record is not entirely clear as to the year), Hollie

Development Company conveyed Tract Three (nine plus acres) to V. G. Perry and Belle Perry, husband and wife. This conveyance, on its face, was a deed absolute. The deed effecting the conveyance was not introduced as an exhibit. However, V. G. Perry testified the original conveyance emanated from a loan of Five Thousand One Hundred Sixteen and Forty/100 Dollars ($5,116.40) made by him to Clement H. Webb and Hollie Development Company.

In 1966 the first Christiansen note and deed of trust (Lake Lotawana property) was in default. Negotiations ensued resulting in Gladys Christiansen taking a promissory note dated March 31, 1966, in the principal amount of Two Thousand One Hundred and no/100 Dollars ($2,100.-00), representing delinquent and unpaid interest, secured by a deed of trust on Tract Two (the eleven acre tract), same bearing interest at the rate of eight per cent per annum, and providing that the principal amount was due February 10, 1967, with Hollie Development Company as maker and Gladys Christiansen as payee. This note and deed of trust will hereinafter be referred to as the second Christiansen note and deed of trust. The deed of trust given to secure payment of this note was subordinate to the Risinger note and deed of trust covering Tract Two (the eleven acre tract). It should be noted that the first Christiansen note and deed of trust (Lake Lotawana property), except for payment of the delinquent interest, otherwise remained unaffected.

On March 31, 1967, Hollie Development Company was in default regarding both the first Christiansen note and deed of trust (the Lake Lotawana property) and the second Christiansen note and deed of trust (the eleven acre tract). As a result of negotiations, Gladys Christiansen accepted a promissory note dated March 31, 1967, in the principal sum of Four Thousand Twenty-five and no/100 Dollars ($4,025.00), due March 31, 1968, with interest thereon at the rate of eight per cent per annum, secured by a deed of trust on Tract Two (the eleven acre tract), wherein Hollie Development Company was maker and Gladys Christiansen was payee. This note and deed of trust will hereinafter be referred to as the third Christiansen note and deed of trust. The principal amount of Four Thousand Twenty-five and no/100 Dollars ($4,025.00), delineated in the third Christiansen note and deed of trust, represented payment of the second Christiansen note and deed of trust, a principal payment of One Thousand and no/100 Dollars ($1,000.00) on the first Christiansen note and deed of trust and interest thereon to the date of February 10, 1967, in the amount of Nine Hundred Twenty-five and no/100 Dollars ($925.00). The deed of trust underlying the second Christiansen note and deed of trust was released of record and the note involved was surrendered. The third Christiansen note and deed of trust was subordinate to the Risinger note and deed of trust with respect to Tract Two (eleven acre tract). As of February 10, 1967, the interest on the first Christiansen note and deed of trust (the Lake Lotawana property) was paid up and the unpaid principal balance as of that date amounted to Seven Thousand Five Hundred and no/100 Dollars ($7,500.00).

On March 31, 1968, Hollie Development Company was in default both as to the first Christiansen note and deed of trust (Lake Lotawana property) and the third Christiansen note and deed of trust (the eleven acre tract). Further, as of March 31, 1968, respondent Christiansen, by endorsement, had become the holder of both the first Christiansen note and deed of trust (Lake Lotawana property) and the third Christiansen note and deed of trust (the eleven acre tract). Respondent Christiansen threatened Hollie Development Company with foreclosure. To stave off foreclosure, Hollie Development Company paid respondent Christiansen Five Hundred Dollars ($500.00) for "an extension of time". The aforementioned was not in writing, nor were any of the terms thereof orally spelled out in the record.

As of July 2, 1968, both the first Christiansen note and deed of trust (Lake Lotawana property) and the third Christiansen note and deed of trust (the eleven acre tract) were still in default and apparently the "extension of time" had expired. On July 2, 1968, Hollie Development Company, as grantor, executed and delivered a Corporation Warranty Deed to respondent Christiansen, as grantee, conveying title to Tract One (Lake Lotawana property). This deed expressly recited that the real property conveyed was subject to the first Christiansen note and deed of trust. Further, on July 2, 1968, Hollie Development Company, as grantor, executed and delivered a Corporation Warranty Deed to respondent Christiansen, as grantee, conveying title to Tract Two (the eleven acre tract). This deed expressly recited that the real property was subject to the Risinger note and deed of trust.

After learning of the existence and priority of the Risinger note and deed of trust, respondent Christiansen, on September 15, 1968, purchased the Risinger note and deed of trust at which time the value of the note was Nine Thousand Two Hundred Thirty-eight and 53/100 Dollars ($9,238.53). The value apparently reflected the unpaid principal owed as of the date of purchase, plus accrued interest. Partial releases as to certain real property secured by the Risinger deed of trust occurred both before and after respondent Christiansen purchased the Risinger note and deed of trust. The record reflects a partial release as to Lots Three, Four, Five, Six and Tract A, Pleasant View Estates on August 16, 1968. The record further reflects a partial release as to Lots Twelve, Thirteen, Fourteen and Sixteen, Pleasant View Estates, on October 13, 1969. The record additionally discloses a partial release as to all of the original thirty-two acre tract, except for that part platted as Pleasant View Estates, on October 13, 1969.

On October 22, 1968, Hollie Development Company "caused the said V. G. Perry and Belle Perry", as grantors, to execute and deliver a Missouri Warranty Deed to respondent Christiansen, as grantee, in consideration of Five Thousand One Hundred Sixteen and 40/100 Dollars ($5,116.40) paid by respondent Christiansen to the Perrys, conveying title to Tract Three (nine plus acres). This deed expressly recited that the real property conveyed was subject to the Risinger note and deed of trust. Prior to execution and delivery of the deed conveying Tract Three (nine plus acres), V. G. Perry consulted with and secured Clement Webb's oral permission to make the conveyance to respondent Christiansen. Additionally, respondent Christiansen secured a written statement signed by Clement H. Webb dated October 22, 1968, reading, "$5,116.40 is balance due to the seller, Mr. Vivian Perry, as of yesterday, Monday, October 21, 1968, and hereby approved as sales price on 9+ acres to Paul Christiansen."

During the fall of 1968, respondent Christiansen advanced to or for the benefit of Hollie Development Company Four Thousand Six Hundred Ninety-four and 93/100 Dollars ($4,694.93) for subdivision improvements in Pleasant View Estates.

On December 18, 1968, Hollie Development Company, as grantor, executed and delivered a Corporaton Warranty Deed to respondent Christiansen, as grantee, conveying title to Tract Four (less than four acres). This deed expressly recited that the real property conveyed was subject to the Risinger note and deed of trust. On December 19, 1968, Hollie Development Company, as grantor, executed and delivered a Corporation Warranty Deed to respondent Christiansen, as grantee, conveying Title to Tract Five (Lots Three, Four, Five, Six and Tract A, Pleasant View Estates, and a tract 111.04 feet by 140 feet north of Pleasant View Estates). This deed expressly recited that the real property conveyed was subject "to encumbrances now of record". Thus, by December 19, 1968, respondent Christiansen was the record owner of Tract One (the Lake Lotawana property), Tract Two (the eleven

acres tract), Tract Three (nine plus acres), Tract Four (less than four acres) and Tract Five (Lots Three, Four, Five, Six and Tract A, Pleasant View Estates, and a tract 111.04 feet by 140 feet north of Pleasant View Estates). With respect to the original undeveloped thirty-two acres (part of which was subdivided and platted as Pleasant View Estates), respondent Christiansen, as of December 19, 1968, was the record owner of all thereof, except Lots Two, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Tracts B and C, Pleasant View Estates. Hollie Development Company was the record owner of Lots Two, Seven, Eight, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates.

Although the record is silent, Hollie Development Company, prior to the filing of the Webb case, apparently conveyed Lots Two, Seven, Eight, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates to Clement H. Webb and Mary Ellen Webb, subject to the lien of the Risinger deed of trust. Lots Twelve, Thirteen, Fourteen and Sixteen, Pleasant View Estates, were apparently conveyed to a third party or parties and, as previously pointed out, released of record from the lien of the Risinger deed of trust on October 13, 1969, by means of a deed of released executed by respondent Christiansen. Further, on October 13, 1969, as previously pointed out, respondent Christiansen released of record from the lien of the Risinger deed of trust, by means of a deed of release, all of the original thirty-two acre tract, except for that part platted as Pleasant View Estates.

In the Hollie case, the five separate deeds, four from Hollie Deveopment Company and one from V. G. Perry and Belle Perry, conveying Tracts One, Two, Three, Four and Five to Paul A. Christiansen, constituted the conveyances sought to be declared equitable mortgages rather than deeds absolute.

Foreclosure by respondent Christiansen, under the Risinger note and deed of trust,

against Lots Two, Seven, Eight, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates, was the subject of the injunction sought in the Webb case.

In the trial court the Hollie case and the Webb case were consolidated, and trial by court ensued. In the Hollie case, trial by court resulted in a judgment in favor of respondent Christiansen. In the Webb case, trial by court resulted in a judicial determination that the total outstanding indebtedness remaining due on the Risinger note was Three Thousand Four Hundred Sixty-four and 25/100 Dollars ($3,464.25), but injunctive relief was denied. Hollie Development Company and the Webbs filed a motion for a new trial in the Hollie case, and the Webbs filed a motion for a new trial in the Webb case. The motion for a new trial in the Hollie case was sustained, but the motion for a new trial in the Webb case was overruled. Webbs duly perfected their appeal in the Webb case. This court, on its own motion, suspended all further proceedings on appeal in the Webb case until a final judgment was rendered in the Hollie case. On re-trial of the Hollie case (before a different judge), judgment was entered in favor of the respondent Christiansen, the gist of which was the instruments conveying Tracts One, Two, Three, Four and Five were deeds absolute and not equitable mortgages as contended by Hollie Development Company and the Webbs, title thereto was perfected in respondent Christiansen, and a "writ of possession" was issued as prayed for. Hollie Development Company and the Webbs perfected their appeal from the judgment entered by the trial court in the Hollie case.

Having, hopefully, cleared the "legal thicket" surrounding the deeds, notes and deeds of trust, the "judicial machete" must be honed and sharpened to, hopefully, clear the "legal thicket" surrounding the facts controlling disposition of the consolidated appeals.

To reach the threshold of appellate disposition in the Hollie case, delineation of

salient facts surrounding the various transactions becomes necessary, bearing in mind at all times certain basic legal principles, and, guardedly, certain peripheral legal principles and legal maxims.

 Certain peripheral legal principles to guardedly bear in mind find expression in numerous cases. A deed of conveyance, absolute on its face, may be an equitable mortgage. Snow v. Funck, 41 S.W.2d 2 (Mo.1931); Mayberry v. Clark, 317 Mo. 442, 297 S.W. 39 (1927). Parol evidence is admissible to prove such to be the fact, notwithstanding the statute of frauds. Mayberry v. Clark, supra; Brightwell v. McAfee, 249 Mo. 562, 155 S.W. 820 (1913); Parker v. Blakeley, 338 Mo. 1189, 93 S.W.2d 981 (1936). Where a deed absolute on its face has its inception in the application for a loan, the transaction will be closely scrutinized and such fact is indicative, but not conclusive, of an equitable mortgage. Cobb v. Day, 106 Mo. 278, 17 S.W. 323 (1891); Williamson v. Frazee, 294 Mo. 320, 242 S.W. 958 (1922); Phillips v. Jackson, 240 Mo. 310, 144 S.W. 112 (1911); Stephens v. Stephens, 232 S.W. 979 (Mo.1921). Where a deed absolute on its face if given in consideration of a previous debt owed by the grantor to the grantee, and the debt still remains enforcible by the grantee against the grantor, the conveyance will be construed as an equitable mortgage. Book v. Beasley, 138 Mo. 455, 40 S.W. 101 (1897); Bobb v. Wolff, 148 Mo. 335, 49 S.W. 996 (1899); Stephens v. Stephens, supra. Where the grantor of a deed absolute on its face remains in possession, such is indicative, but not conclusive, of an equitable mortgage. Reynolds v. Lenger, 366 S.W.2d 396 (Mo. 1963); Cobb v. Day, supra; Book v. Beasley, supra. Where the grantor of a deed absolute on its face makes improvements on the conveyed property subsequent to the conveyance, such is indicative, but not conclusive, of an equitable mortgage. Reynolds v. Lenger, supra; Cobb v. Day, supra. Where, prior to the execution and delivery of a deed absolute on its face, the property is subject to a note and deed of trust, the fact that the note is not surrendered and the deed of trust released of record is indicative, but not conclusive, of an equitable mortgage. Book v. Beasley, supra; Bobb v. Wolff, supra; Smith v. Dickerson, 199 S.W. 956 (Mo.1917). Substantial disparity between the alleged consideration and the fair market value of real property conveyed by a deed absolute on its face, where the grantor contends the conveyance is an equitable mortgage, is indicative, but not conclusive, of an equitable mortgage. Donovan v. Boeck, 217 Mo. 70, 116 S.W. 543 (1909); Cobb v. Day, supra; Book v. Beasley, supra.

 Of opposite tenor, where the grantor of a deed absolute on its face contends the conveyance is an equitable mortgage, the fact that the property is conveyed subject to a prior lien is indicative, but not conclusive, of a deed absolute. Snow v. Funck, supra. Where the grantor of a deed absolute on its face contends that the conveyance is an equitable mortgage, the fact that the grantee pays taxes levied against the property is indicative, but not conclusive, of a deed absolute. Parrish v. McDaniel, 358 S.W.2d 32 (Mo.1962). By the same logic where the grantor of a deed absolute on its face contends that the conveyance is an equitable mortgage, the fact that the grantee obtains and pays for insurance on the property is indicative, but not conclusive, of a deed absolute. Where the grantor of a deed absolute on its face contends the conveyance is an equitable mortgage, the fact that the conveyance emanated from an amicable avoidance of foreclosure is indicative, but not conclusive, of a deed absolute. Donovan v. Boeck, supra.

 There are certain "white bearded" legal maxims that find expression in prior case law dealing with the same principal issue existing in the Hollie case, viz, "(O)nce a mortgage is always a mortgage" (Snow v. Funck, supra; Stephens v. Stephens, supra) and "No debt, no mort-

gage" (Donovan v. Boeck, supra). However, such maxims are no more helpful to ultimate disposition of the Hollie case than are the peripheral legal principles previously mentioned. Reliance solely on legal maxims and peripheral principles produces mawkish legal results. The legalese personified by such peripheral principles and maxims beg, rather than substantially aid, determination of whether deeds absolute on their face are, in fact, equitable mortgages. There are, however, certain principles firmly entrenched in our law which may, appropriately, be described as basic, hard-core principles. The following basic hard-core principles are controlling in the Hollie case. The burden imposed upon one seeking to have a conveyance absolute on its face declared an equitable mortgage is proof beyond a reasonable doubt by clear, cogent and convincing evidence. Stafford v. McDonnell, 359 Mo. 925, 224 S.W.2d 951 (1949); Mayberry v. Clark, supra. Corollary to the burden of proof, a conveyance absolute on its face is presumed to be a deed and not an equitable mortgage. Bobb v. Wolff, supra; Mosley v. Cavanagh, 344 Mo. 236, 125 S.W.2d 852 (1939); Wright v. Brown, 177 S.W.2d 506 (Mo. 1944). Whether a conveyance absolute on its face is a deed or equitable mortgage is determined by the intent of the parties at the time of the conveyance. Stephen v. Stephens, supra; Williamson v. Frazee, supra; Book v. Beasley, supra. In determining intent, the court in Bobb v. Wolff, supra, 49 S.W., 1. c. 998 succinctly spelled out the applicable test:

> "While the courts have applied many tests to disclose the true nature of the transaction,—whether an absolute deed or a mortgage,—*the one sure test and essential requisite has ever been 'the continued existence of a debt' from the grantor to the grantee in the deed.* If there is no debt, the instrument cannot be a mortgage, whatever else it may be." (Emphasis added.)

Statements of both the grantor and the grantee, subsequent to the conveyance, are admissible and carry weight to disclose their prevailing intent at the time of the conveyance. Stephens v. Stephens, supra. The intent existing at the time of the conveyance brands the conveyance as either a deed absolute or an equitable mortgage and, whether a deed absolute or an equitable mortgage, it retains the appropriate legal characteristics and the rights of the parties are for all time fixed and determined accordingly. Williamson v. Frazee, supra.

■ The burden rests upon the grantor to prove a binding obligation on his part continuing after the conveyance to repay to the grantee the consideration from which the conveyance sprang, and failure to do so *"is generally accepted as decisive proof that it (the conveyance) was not meant as a mortgage."* (Emphasis added.) Parrish v. McDaniel, supra.

It now becomes appropriate to correlate the facts in the Hollie case to both the peripheral and basic principles enunciated.

Regarding the peripheral principles, the record discloses facts that militate both for and against appellant's contention that the deeds were, in fact, equitable mortgages. Hollie Development Company retained possession of the property described in the five separate deeds, although respondent Christiansen had been seeking possession since late 1969. Additionally, appellants made certain improvements on part of the real property subsequent to the deeds of conveyance, and there was a substantial disparity between the fair market value of the property and the consideration attributed to the five separate deeds. On the other hand, respondent Christiansen paid several years back taxes, as well as current taxes levied against the property, secured and paid for insurance on the property, and the deeds conveying Tracts One and Two were given to avoid foreclosure.

Before specifically correlating the facts in the Hollie case to the basic principles heretofore enunciated, a delineation of cer-

tain pervasive evidence and contentions of the parties appears appropriate.

Respondent Christiansen contended throughout, and so testified, with respect to the five separate warranty deeds, as follows: that the consideration for Tracts One and Two was extinguishment of the debts represented by the first Christiansen note and deed of trust and the third Christiansen note and deed of trust; that the consideration for Tract Three (conveyed by the Perrys) was Five Thousand One Hundred Sixteen and 40/100 Dollars ($5,116.40) paid by him to the Perrys; that the consideration for Tracts Four and Five was Four Thousand Six Hundred Ninety-four and 93/100 Dollars ($4,694.93) advanced to or for the benefit of Hollie Development Company for subdivision improvements in Pleasant View Estates; and, in summation, that the five separate conveyances were what they purported to be —deeds absolute.

Appellants, perforce, contended throughout the course of the evidence, by vague and general innuendoes at best, that the five separate deeds were, in fact, equitable mortgages.

Prior to execution and delivery of the deeds conveying Tracts One and Two, respondent Christiansen had requested the trustee to initiate and complete foreclosure proceedings in accordance with the terms of the first Christiansen deed of trust and the third Christiansen deed of trust. The trustee contacted Hollie Development Company before doing so. No foreclosure proceedings were initiated. Instead, Hollie Development Company conveyed Tracts One and Two to respondent Christiansen by Corporation Warranty Deeds.

Concerning the Perry conveyance (Tract Three), V. G. Perry testified that Tract Three was conveyed to him by Hollie Development Company, he always considered himself the legal owner of the property and, as the legal owner, he had the right to sell and convey the property. V. G. Perry's testimony will be discussed in greater

detail later, in view, as will hereinafter be demonstrated, of its critical importance to ultimate disposition of the Hollie case.

The record in the Hollie case is replete with evidence that Hollie Development Company was in dire financial straits respecting both past and current financial obligations and indebtedness. Likewise, Hollie Development Company appeared obsessed with development of Pleasant View Estates, to the extent of knowingly casting caution and sound business judgment to the wind to complete development of the subdivision.

With the facts correlated to the peripheral principles and maxims and the pervasive evidence and contentions of the parties outlined, attention now focuses on correlation of the facts to the controlling basic hardcore principles in the Hollie case.

As previously mentioned, a rather detailed summary of the testimony of appellants' witness V. G. Perry assumes critical importance. The conveyance of Tract Three by Hollie Development Company to V. G. Perry and his wife occurred in the following manner. Hollie Development Company needed funds and V. G. Perry made them available. In conjunction therewith, Hollie Development Company conveyed Tract Three by warranty deed to V. G. Perry and his wife. V. G. Perry, who was appellants' witness, in explanation of the conveyance and the prevailing intent of the parties regarding the conveyance, testified that title to Tract Three was conveyed to him and he became the legal owner of the property. Further, all the grantor had was "an option to repurchase" provided the grantor repaid the funds that had been made available within a certain time. Nowhere in his testimony did V. G. Perry, directly or indirectly, indicate that there was any binding obligation on the grantor to repay the funds that had been made available. By way of further explanation, V. G. Perry testified that since the grantor had only "an option to repurchase", he, Perry avoided forclosure, and effected a

capital gain rather than ordinary income attributable to interest. V. G. Perry also testified that if respondent Christiansen's dealings with Hollie Development Company were like his, and the grantor did not pay, such failure would "wipe out" any rights Hollie Development Company might have to the property and respondent Christiansen would be the "legal owner".

Clement H. Webb, president and principal stockholder of Hollie Development Company, requested and had an Independence, Missouri, attorney prepare plaintiff's exhibit 14. Hollie Development Company introduced plaintiff's exhibit 14 and the same was admitted into evidnece. Plaintoff's exhibit 14 was captioned "AGREEMENT" and described Hollie Development Company and respondent Christiansen as parties thereto. Paraphrased, it provided that Hollie Development Company had the right to redeem any part or all of the real property described in the five separate warranty deeds (which are the subject of the Hollie case) on or before December 31, 1969, by paying in full the mortgage balances against any of said properties being redeemed and reimbursing respondent Christiansen for all expenses incurred with respect to any of said properties, and upon payment respondent Christiansen was to reconvey by warranty deed. It is significant that the "AGREEMENT" in no way bound or obligated Hollie Development Company to do anything. Hollie Development Company could pay or not at its whim or caprice. Thus, Hollie Development Company did not recognize the "continued existence of a debt". (Bobb v. Wolff, supra). The "AGREEMENT" failing, as it did, to impose a binding obligation on Hollie Development Company to pay any amount, is "decisive proof" (Parrish v. McDaniel, supra) that the five separate warranty deeds were not equitable mortgages.

The "cul de sac" of appellants' entire case is that Clement H. Webb testified that plaintiff's exhibit 14 expressed the agreement and prevailing intent of the parties surrounding the conveyance of Tracts One, Two, Four and Five by Hollie Development Company to respondent Christiansen and, further, the conveyances to respondent Christiansen were the same "deal" Hollie Development Company had with V. G. Perry regarding Tract Three. Thus, the inescapable inference is the language "right to redeem" employed in the "AGREEMENT" was and is synonymous with "an option to repurchase" as employed in the Perry "deal". V. G. Perry, called and vouched for by appellants, gave the only explanation regarding the "deal", which was and is binding upon appellants.

Respondent Christiansen did not sign or execute plaintiff's exhibit 14 (on the basis that he did not recognize Hollie Development Company as even having "an option to repurchase"), but this is unavailing to appellants. Appellants can not escape their own evidentiary version of what they claim the prevailing intent of Hollie Development Company and respondent Christiansen was at the time of execution and delivery of the five separate warranty deeds. Appellant's evidence, as to the prevailing intent of Hollie Development Company at the time the various conveyances were executed, was at war with and defeated appellant's contention, both during trial and on appeal, that the various conveyances were equitable mortgages. The trial court, in view of the judgment entered, obviously concluded that the conveyances were neither equitable mortgages nor conditional sales, but were deeds absolute. The judgment was consistent with the testimony of respondent and supported by the evidence. Bear in mind, plaintiff's exhibit 14 was never executed by respondent, respondent denied Hollie Development Company had an option to repurchase, and respondent came forth with evidence amply sufficient to support the finding of the trial court that the conveyances were what they purported to be—deeds absolute.

One additional observation seems pertinent. Why would respondent Christiansen

substitute deeds of trust, which are easily subject to foreclosure without court action, for equitable mortgages, which can only be foreclosed by court action (Stephens v. Stephens, supra)? This query defies a satisfactory explanation.

Appellants argue that count three of respondent's counterclaim constituted a binding judicial admission that any sum advanced by respondent to complete the development of Pleasant View Estates constituted a loan and not consideration for the conveyance of Tracts Four and Five, thereby precluding a finding by the trial court that the conveyances were not equitable mortgages. This all encompassing position urged by appellants does not "wash" for a number of reasons. One, when construed with all the other pleadings and the evidence—respondent testified that he advanced money to complete development of Pleasant View Estates after execution and delivery of the deeds conveying Tracts Four and Five, and in excess of the Four Thousand Six Hundred Ninety-four Dollars and Ninety-three Cents ($4,694.93) he claimed constituted the consideration for said deeds—the only reasonable construction of count three of respondent's counterclaim is that it sought recovery of funds having no connection with the consideration attributed to the conveyance of Tracts Four and Five. Two, the judgment entered by the trial court made no reference to count three of respondent's counterclaim and no judgment was entered with respect thereto. Respondent filed no after trial motion. Appellants, in their after trial motion, unequivocally stated that respondent offered no evidence to support any issue raised by count three of his counterclaim. Respondent dismissed count three of his counterclaim prior to the time the transcript on appeal was filed in this court. The aforementioned conclusively demonstrates that respondent abandoned count three of his counterclaim, both at trial and on appeal. See Palmer v. Lasswell, 279 S.W.2d 535 (MoApp.1955). Bledsoe v. Northside Supply & Development Company, 429 S.W.2d 727 (Mo.1968), holds that allegations in abandoned pleadings are not binding judicial admissions only admissions against interest, if introduced into evidence, to be given such weight as accorded by the trier of the facts. *Bledsoe* distinguishes Wehrli v. Wabash Railroad Co., 315 S.W.2d 765, (Mo.1958), cited by appellants, on the basis that *Wehrli* involved a pleading which had not been abandoned. Appellants' contention relative to count three of respondent's counterclaim fails as a muniment to reverse the judgment of the trial court.

Additionally, appellants contend that respondent "gave false testimony" at the trial, thereby causing all of his testimony to be viewed with circumspection. Appellants' charge that respondent "gave false testimony" *is not cut from whole cloth.* The background of the charge springs from respondent's testimony on cross-examination during the first trial when he was asked if he secured waivers from the adjoining lot owners concerning Tract One. Respondent replied, "I haven't received that." Respondent was then asked, "Did you give to them, and did they give to you, any such waiver?" Respondent answered, "Yes, they signed—an acknowledgment they had been presented with this." This testimony was used as a basis to cross-examine respondent with during the second trial. The evidence shows that respondent did request such waivers and the adjoining lot owners acknowledged such requests, but did not grant the waivers. Appellants structure respondent's testimony as meaning he received acknowledgments to his requests *and waivers.* A careful review of respondent's testimony, in proper context, refutes appellant's contention that he "gave false testimony". As hereinafter noted, this court will defer to the trial court's assessment of respondent's credibility.

In equity cases an appellate court reviews the case de novo upon both the law and evidence, giving due deference to

the opportunity afforded the trial court to judge the credibility of the witnesses, and the judgment of the trial court will not be disturbed unless clearly erroneous. Franke v. Franke, 447 S.W.2d 308 (Mo.1969), Stafford v. McDonnell, supra.

The appellants in the Hollie case did not overcome the initial presumption facing them, i. e., the five separate conveyances, absolute on their face, were what they purported to be—deeds. (Bobb v. Wolff, supra; Mosley v. Cavanagh, supra; Wright v. Brown, supra). Necessarily, appellants failed to sustain the burden of proof imposed upon them. The judgment in favor of respondent Christiansen entered by the trial court in the Hollie case was supported by both the law and the weight of the evidence.

Turning now to the Webb case, the trustee of the Risinger deed of trust, at the request of respondent Christiansen (holder of the Risinger note, which was in default), initiated foreclosure proceedings against Lots Two, Four, Seven, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates. Clement H. Webb and Mary Ellen Webb brought suit for determination of the amount of principal and interest, if any, due and owing on the Risinger note and to enjoin the trustee from proceeding with foreclosure upon payment of the amount, if any, determined by the court. The judgment of the trial court, from which Webbs perfected their appeal, held there was an unpaid balance due and owing on the Risinger note in the amount of Three Thousand Four Hundred Sixty-Four and 25/100 Dollars ($3,464.25), plus interest thereon at the rate of six per cent per annum from September 14, 1968, to the date of the judgment (October 6, 1970), and, in the event full payment was not made, the trustee was directed to proceed with foreclosure proceedings as authorized by law. On appeal the Webbs contend, alternatively, (1) that the entire indebtedness represented by the Risinger note and deed of trust has been discharged (based on a principle of ratability urged by the Webbs)

and the trustee should be permanently enjoined from foreclosing, or (2) that the amount of Three Thousand Four Hundred Sixty-Four and 25/100 Dollars ($3,464.25), plus interest, does not represent (based on the principle of ratability urged by the Webbs) the correct amount of the outstanding indebtedness due and owing on the Risinger note and the correct amount of the outstanding indebtedness should be ascertained and the trustee enjoined from foreclosing upon payment of the correctly ascertained amount of the outstanding indebtedness.

The Webbs contend that (1) each of the several parts making up the whole of real property bears only its pro rata share of any total outstanding indebtedness secured by a deed of trust on the whole of the property, if the beneficiary of the deed of trust purchases or releases part, but not all, of the property subject to the lien of the deed of trust, and, therefore (2) if the beneficiary of a deed of trust purchases or releases part, but not all, of the whole of the property subject to the lien of a deed of trust and the fair market value (as determined at the time of such purchase or release) of the part purchased or released equals or exceeds the pro rata share of the total outstanding indebtedness borne by the purchased or released part, the beneficiary, by operation of law, is deemed to have consented that the total outstanding indebtedness be credited with and reduced by the amount of the pro rata share of the total outstanding indebtedness borne by the part of the whole of the property purchased or released.

The above contention urged by the Webbs constitutes a somewhat unique principle of law. The principle finds far from terse expression in 59 C.J.S. Mortgages § 430, p. 655; Brooks v. Benham, 70 Conn. 92, 38 A. 908, 39 A. 1112 (Conn.1897), and Billings v. Lippel, 184 Md. 1, 40 A.2d 62 (Md.1944), cited by the Webbs as authoritative support. The true catalyst for the unique principle is common sense justice. Parkey v. Veatch, 164 Mo. 375, 64 S.W.

114 (1901) and Hall v. Morgan, 79 Mo. 47 (1883), not cited by either of the parties, although not involving facts identical to those in the Webb case, judicially recognize the fundamental equitable concepts underlying the principle advocated by the Webbs.

A brief discussion of some of the more pertinent ramifications of the unique principle advanced by the Webbs appears both appropriate and desirable. The beneficiary of a deed of trust is under no compulsion and, of course, may and could refuse to purchase a part of the whole of the property subject to the lien of a deed of trust, when the consideration to be paid, combined with the pro rata share of the total outstanding indebtedness borne by the part to be purchased, exceeds the fair market value of the part to be purchased. In case a beneficiary purchases a part of the whole of the property subject to the lien of a deed of trust, and where the fair market value of the part purchased at the time exceeds the combined amount paid and the pro rata share of the total outstanding indebtedness borne by the part purchased, the beneficiary, who so purchases, still retains the benefit of a conscionable bargain, since the total outstanding indebtedness is only credited with and reduced by the pro rata share of the total outstanding indebtedness borne by the part purchased. Otherwise, if the unique principle urged by the Webbs is rejected in toto an unconscionable bargain would enure to the benefit of the beneficiary. A beneficiary is not compelled to release part of the property subject to the lien of a deed of trust unless, by agreement, he receives for such release, at a minimum, an amount sufficient to satisfy the pro rata share of the total outstanding indebtedness borne by the released part of the whole of the property.

The Webbs further urge an extension of the aforementioned basic principle, namely, when the fair market value of a part of the whole of the property subject to a deed of trust exceeds the pro rata share of the total outstanding indebtedness borne by such part of the whole of the property, whether purchased or released by the beneficiary, the full amount represented by the fair market value of the part purchased or released should be credited on and, accordingly, reduce the total outstanding indebtedness. Extension of the basic principle, as additionally urged by the Webbs, is so extreme as to rape any and all common sense, sound, fair and equitable considerations that bottom adoption of the more limited principle of giving credit on and reducing the total outstanding indebtedness in an amount equalling, but not exceeding, the pro rata share of the total indebtedness borne by the part of the whole of the property purchased or released.

The following is set forth as an example of application of the basic principle which the Webbs urge the court to adopt. A owns twenty acres of real property. B loans A $10,000.00. The loan is evidenced by A's promissory note and secured by a deed of trust on the entire twenty acres. Thereafter B purchases from A ten of the twenty acres secured by the deed of trust, subject to the deed of trust. At the time of purchase the ten acres purchased by B has a fair market value of $7,500.00 and the remaining ten acres retained by A has a fair market value of $7,500.00 (also valued as of the date of B's purchase). Thus, the pro rata share of the total outstanding indebtedness borne by each of the ten acre tracts is $5,000.00. Since the fair market value of the ten acres purchased by B exceeds said ten acres' pro rata share of the total outstanding indebtedness by $2,500.00, A is entitled to have the total outstanding indebtedness credited with and reduced by the amount of $5,000.00, thereby reducing the total outstanding indebtedness to $5,000.00. Mathematically stated, the pro rata share of the total outstanding indebtedness borne by the part of the whole of the property purchased or released, and the amount to be credited on the total outstanding indebtedness, is X; the fair mar-

ket·value of the part of the whole released or purchased is A; the fair market value of all the parts making up the whole of the property is B; the total outstanding indebtedness immediately prior to any purchase or release is C; $X = \dfrac{A}{B} \times C.$

■■■ More succinctly stated, the Webbs urge the court to adopt and apply a principle of ratability of total outstanding indebtedness to all of the parts making up the whole of property secured by a deed of trust, and reduction of the total outstanding indebtedness accordingly, when the beneficiary purchases or releases a part of the whole of the property subject to the deed of trust. The basic principle urged by the Webbs is unique to the existing law in this state since the fair market value of the various parts making up the whole of the property, as well as the fair market value of the whole of the property, are key factors in determining the pro rata share of the total indebtedness to be borne by the parts of the whole of the property purchased or released by a beneficiary. Parkey v. Veach, supra, although recognizing that parts of the whole of property secured by a deed of trust which are purchased or released by a beneficiary bear their pro rata share of the total outstanding indebtedness, held the pro rata share of the total outstanding indebtedness to be borne by such parts was determined on a straight fractional basis. Law, like motion, is relative. Law just as surely results in injustice when it is passive as when it affirmatively reaches an unjust result. Modern day society can not afford the luxury of a passive system of justice. Consequently, lack of legal precedent should never stand as a deterrent to the dispensation of justice. A mumpsimus judicial system is no balm for a party who claims to have suffered an injustice.

■■■ The record in the Webb case discloses sharp conflict in the fair market value of all the parts making up the whole of the property subject to the lien of the Risinger deed of trust. Nevertheless, even on the basis of the lowest fair market value attributed, there is no escape from the conclusion that the fair market value of Tracts Two, Three, Four and Five acquired by respondent Christiansen substantially exceeded the amount of the consideration claimed by respondent Christiansen for the four tracts and the pro rata share of the total outstanding indebtedness evidenced by the Risinger note borne by them combined. The aforementioned, standing alone, constitutes a compelling reason to adopt and apply the basic principle urged by the Webbs. Moreover, the record does not disclose any intervening rights of creditors or third parties which would be adversely affected if the basic principle of ratability urged by the Webbs is adopted and applied.

Adoption of the basic principle of ratability urged by the Webbs, in view of the particular facts and inescapable conclusions existing in the Webb case, appears to be consonant with the fundamental concept that equity seeks to do justice and avoid injustice. Hydesburg Common School District of Ralls County et al. v. Rensselaer Common School District of Ralls County, 218 S.W.2d 833 (Mo.App.1949). The basic principle of ratability urged by the Webbs will be adopted and applied; extension of the basic principle of ratability to the extreme urged by the Webbs—even though it finds support in Brooks v. Benham, supra —is rejected. Recognizing that the basic principle of ratability herein adopted goes beyond the periphery of existing law in this state to some extent, and being fully cognizant that it pertains to property and mortgage law, both of which permeate countless business and individual transactions occurring daily in the normal course of our society, adoption and application of the basic principle of ratability is specifically limited to the facts existing in the Webb case. Failure to so limit its adoption and applicability would constitute insensate judicial conduct. Determination of

adoption and application of the basic principle of ratability enunciated and applied in the Webb case is specifically reserved regarding cases involving facts and legal and equitable rights different from those existing in the Webb case.

█ The greater weight of the credible evidence discloses the following fair market values attributable to the parts of the whole of the property originally subject to the Risinger deed of trust, as of the date of the pertinent purchases and releases:

| | |
|---|---:|
| Tract Two (11 acre tract) | $22,000.00 |
| Tract Three (9 plus acres) | 28,500.00 |
| Tract Four (less than 4 acres) | 8,000.00 |
| Lots 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 and Tracts B and C Pleasant View Estates | 17,940.00 |
| TOTAL | $76,440.00 |

Respondent Christiansen acquired the Risinger note on September 15, 1968, at which time the unpaid principal and accrued interest amounted to $9,238.53. The trial court, in view of the judgment rendered, apparently applied the basic principle of ratability urged by the Webbs. As heretofore pointed out, Webbs urge on appeal that the amount determined by the trial court as still due and owing on the Risinger note, $3,464.25, is incorrect. Application of the mathematical formula springing from the basic principle of ratability, seriatim, using the above fair market values, and taking into consideration the difference in dates of purchase or release of different parts of the whole of the property, and the consequent variability of accruing interest, discloses that the total unpaid indebtedness (principal and accrued interest) evidenced by the Risinger note amounted to One Thousand Six Hundred Ninety-two and 81/100 Dollars ($1,692.81) as of October 6, 1970, the date of the judgment entered by the trial court in the Webb case.

In Hollie Development Company, a Missouri Corporation, vs. Paul A. Christiansen and Clement H. Webb and Mary Ellen Webb, No. KCD 26264, the judgment entered by the trial court is affirmed.

In Clement H. Webb and Mary Ellen Webb v. Phil R. Harrington and Paul A. Christiansen, No. KCD 25730, the judgment entered by the trial court is reversed and the case remanded with directions to enter the following judgment: It is adjudged and decreed that respondent Paul A. Christiansen is the legal holder of that certain note cited in and described in a deed of trust dated June 22, 1960, and found of record in Book 1392 at Page 194, in the office of the Recorder of Deeds of Jackson County, Missouri, at Independence, and said note secured by the referred to deed of trust has an unpaid balance due and owing of One Thousand Six Hundred Ninety-two and 81/100 Dollars ($1,692.81) as of October 6, 1970, plus interest thereon at the rate of six per cent per annum from October 6, 1970, to and including the date the judgment is entered; it is further adjudged and decreed that Phil R. Harrington, trustee in the deed of trust herein referred to, is enjoined, for a period of sixty (60) days from the date the judgment is entered, from foreclosing against Lots Two, Four, Seven, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates, Jackson County, Missouri; it is further adjudged and decreed that in the event Clement H. Webb and Mary Ellen Webb fail to pay and satisfy the full amount herein adjudged and decreed to be due and owing on the note secured by the deed of trust referred to herein within sixty days from the date the judgment is entered, the trustee is authorized and directed to initiate and complete foreclosure proceedings against Lots Two, Four, Seven, Nine, Ten, Eleven, Fifteen and Tracts B and C, Pleasant View Estates, Jackson County, Missouri, as authorized by law; it is further adjudged and decreed that the costs in this action be and are taxed against respondent Paul A. Christiansen.

All concur.