George S. WILE and Retta Y. Akers Wile, Plaintiffs-Respondents,

v.

Marie E. DONOVAN, Defendant-Appellant.

No. 10258.

Missouri Court of Appeals, Springfield District.

July 2, 1976.

William D. Hamblin, Brooks & Hamblin, Chartered, Overland Park, Kan., for plaintiffs-respondents.

John M. Belisle, Morran D. Harris, Osceola, for defendant-appellant.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Plaintiffs sued in equity to have a warranty deed absolute on its face declared a mortgage and to require defendant to convey the subject real estate to plaintiffs upon payment of the sum the court found due. The chancellor obliged plaintiffs as prayed, and after two prior unsuccessful attempts to perfect an appeal [*Wile v. Donovan*, 514 S.W.2d 177 (Mo.App.1974) and 532 S.W.2d 891 (Mo.App.1976)], defendant has now appealed from what we consider to be the final appealable judgment in the cause.

As owners of a 270 acre St. Clair County farm valued at $39,000, plaintiffs were obligated to a bank as evidenced by a note which was secured by a deed of trust. No note payments were ever made. The bank commenced foreclosure proceedings with the sale date set for May 15, 1970. In fine and according to plaintiffs' evidence (defendant offered none), arrangements were made through defendant's son for defendant to "loan" plaintiffs sufficient money to pay off their note at the bank and thus thwart the foreclosure. On the day before the sale, plaintiffs executed and delivered to defendant a warranty deed to the farm and contemporaneously therewith signed, as did defendant, the following:

"AGREEMENT

"This agreement made and entered into this 14th day of May, 1970, by and between [plaintiffs] and [defendant] . . . Witnesseth: '

"Whereas, [plaintiffs] are the owners of . . . 270 acres in St. Clair County . . . as hereinafter described, and,

"Whereas, said property is being foreclosed because [plaintiffs] are in arrears on a note payable to the . . . Bank . . in the approximate amount of $13,750.00 plus costs, and,

"Whereas, the [plaintiffs] are financially unable at this time to raise funds . . . to pay the sum due the . . . Bank . . . and are now in danger of losing . . . said real estate hereinafter described, and,

"Whereas, the [defendant] is willing to pay the . . . Bank . . . the balance due on said note and deed of trust including all costs and fees, now therefore in consideration of the mutual promises and

covenants herein stated it is agreed as follows:

"1. The [defendant] shall, prior to Friday, May 15, 1970, pay to the . . . Bank . . . the sum of $13,750.00 plus costs and fees of foreclosure.[1]

"2. The [plaintiffs] shall by warranty deed convey to the [defendant] the following described real estate: . . . .

"3. It is further understood and agreed . . . that [plaintiffs] shall have until November 15, 1970, within which to repay to the [defendant], the amount paid by the [defendant] to the . . . Bank . . . and the further sum of interest 10% (ten per cent) per annum from and after May 15, 1970 to the date of repayment.[2]

"4. It is further understood and agreed . . . that in the event the [plaintiffs] repay the sum above mentioned to the [defendant] by November 15, 1970, the [defendant] shall, by warranty deed, convey the above described real estate to the [plaintiffs].

"5. It is further agreed, however, that in the event the [plaintiffs] fail to pay the above sum to the [defendant] by November 15, 1970, then the obligation of the [defendant] to re-convey said land to [plaintiffs] shall lapse and the land shall remain the property, free and clear from any claims of the [plaintiffs], of the [defendant] and the considerations previously recited and the covenants herein shall constitute the consideration for the transfer of the aforementioned property from the [plaintiffs] to the [defendant].

"6. It is further agreed and understood that all crops and produce from the aforementioned land shall belong to the [plaintiffs] along with all subsidies or government payments under existing programs, until November 15, 1970."

Plaintiffs' evidence further showed that before the payoff deadline date of November 15, 1970, defendant agreed to extend the payoff time for 30 days or until December 15, 1970. However, prior to December 15, 1970, when plaintiffs were ready, willing and able to make payment, defendant and her son refused to give plaintiffs "the payoff figure" because defendant intended to keep the farm.

What Somerville, J., has denominated as the "peripheral legal principles," "certain 'white bearded' legal maxims," and "basic hard-core principles" applicable to cases where grantors undertake to change deeds absolute on their face into equitable mortgages, are painstakingly collected and documented in *Webb v. Harrington*, 504 S.W.2d 252, 260–261[1–15] (Mo.App.1973). We have neither the temerity nor the ability to undertake an improvement on what our brother jurist has written, and leave it to the interested reader to peruse *Webb* for himself. Nevertheless, especially applicable to the instant case is what was quoted and written in *Webb*, l.c. 261: " 'While the courts have applied many tests to disclose the true nature of the transaction,—whether an absolute deed or a mortgage,—*the one sure test and essential requisite has ever been "the continued existence of a debt" from the grantor to the grantee in the deed*. If there is no debt, the instrument cannot be a mortgage, whatever else it may be.' . . . The burden rests upon the grantor to prove a binding obligation on his part continuing after the conveyance to repay to the grantee the consideration from which the conveyance sprang, and failure to do so '*is generally accepted as decisive* proof that it (the conveyance) was not meant as a mortgage' ".

Plaintiffs attached to and incorporated in their amended petition upon which the cause was tried the "Agreement" above recited. In the pleading plaintiffs alleged that at the time of the conveyance they were indebted to defendant "in the sum of approximately $15,000.00 as evidenced by agreement entered into by plaintiffs and defendant." And while plaintiffs assumed throughout the trial that the "Agreement" was proof of "a loan" or was (as erroneous-

---

1. The trial court found defendant had paid the bank a total of $14,050.

2. The court nisi held the 10% interest rate was usurious and reduced it to 6%.

ly referred to by one plaintiff) "the note," we perceive nothing in that writing which indicates an obligation on plaintiffs' part to pay defendant anything at any time. The burden was on plaintiffs to prove a binding obligation on their part continuing after the conveyance to repay the defendant the consideration from which the conveyance sprang. ". . . the 'AGREEMENT' in no way bound or obligated [plaintiffs] to do anything. [They] could pay or not at [their] whim or caprice. Thus, [plaintiffs by the "Agreement"] did not recognize the 'continued existence of a debt.' (*Bobb v. Wolff*, supra [148 Mo. 335, 344, 49 S.W. 996, 998 (1899)]). The 'AGREEMENT' failing, as it did, to impose a binding obligation on [plaintiffs] to pay any amount, is 'decisive proof' (*Parrish v. McDaniel*, supra [358 S.W.2d 32 (Mo.1962)]) that the . . . warranty [deed] [was] not [an] equitable mortgage[.]" *Webb v. Harrington*, supra, 504 S.W.2d at 263.

■ "A fact necessary and indispensable to hold a deed absolute on its face to be a mortgage is that the deed, although absolute in form, was in fact given as a mere security for a debt. . . . The existence of a debt is indispensable to the existence of a mortgage. . . . Plaintiff[s'] proof did not establish that the relationship of debtor and creditor existed between [plaintiffs and defendant] after the execution [of the] warranty deed, or that the parties at that time intended that the deed operate only as a mortgage. There is a presumption that an absolute, unconditional conveyance of land is what it purports to be, that is, a deed, . . . and that presumption was not overcome." *Parrish v. McDaniel*, supra, 358 S.W.2d at 35[1–5].

In *Reilly v. Cullen*, 159 Mo. 322, 60 S.W. 126 (1900), we have a situation somewhat similar to the instant case except the agreement executed contemporaneously with the deed showed that the parties intended the deed as a mortgage by reciting, inter alia, the deed was given "to secure to said [defendant] money owed to him by said [plaintiff]." This showed that the purported deed was to secure a loan. No such fact

was proven in the present case. While the "Agreement" in this matter may have shown there was a debt at the inception for money paid by defendant to the bank to avoid the foreclosure, the "Agreement" did not provide and plaintiffs did not prove that this consideration survived and continued to subsist as a debt of plaintiffs after execution of the warranty deed to defendant. The "Agreement" could be construed as giving plaintiffs an option to obtain title to the farm if they paid defendant a certain sum of money within the time specified or extended, but it did not impose upon plaintiffs the obligation to pay defendant anything. Whether plaintiffs paid or did not pay to get back the farm was something for them to alone decide, and their failure to pay did not leave them with a continuing debt or obligation.

■ The facts recited in this opinion and what we have gleaned from reading the record would indicate that plaintiffs, before the expiration of the foregoing "Agreement" as extended, were ready, willing and able to pay the money necessary to obligate defendant to convey the farm to them as defendant had contracted to do, but that defendant, in violation of the "Agreement", refused to inform plaintiffs of the amount of the necessary payoff or made it impossible for plaintiffs to make the necessary tender. If plaintiffs could sustain their burden of proof in such a matter, it is conceivable plaintiffs may have a remedy via specific performance of the "Agreement" or otherwise. Plaintiffs' farm, if their proof is accepted, was worth considerably more than what defendant paid the bank (note 1). Where, as here, there is evidence tending to show a plaintiff has rights growing out of the transaction involved, but has misconceived the remedy by bringing an action to have a deed declared a mortgage, an appellate court has discretion in the matter and may remand the cause to permit the petition to be amended, and a retrial of the cause. *Wright v. Brown*, 177 S.W.2d 506, 511[4] (Mo.1944). In the exercise of our discretion, we reverse the decree and order the cause remanded

with directions to allow plaintiffs to amend their petition, if they so desire; or if plaintiffs do not desire to amend within the time to be set and specified by the trial court, to render judgment for defendant.

All concur.