**Homer F. DILTS and Janice Dilts, Plaintiffs-Appellants,**

v.

**Forrest LYNCH, Defendant-Respondent.**

**No. 12745.**

Missouri Court of Appeals,
Southern District,
Division One.

July 21, 1983.

John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, James E. Curry, Ava, for plaintiffs-appellants.

Peter H. Rea, Connie L. Wible, Branson, for defendant-respondent.

GREENE, Chief Judge.

This appeal involves a contract for the sale of real estate and a subsequent rescission and release agreement. Plaintiffs, Homer and Janice Dilts, received a jury verdict against defendant, Forrest Lynch, in the sum of $20,000 and judgment was rendered in that amount. The trial court set aside the judgment and entered judgment for Lynch notwithstanding the jury verdict. The case was presented to the jury on a breach of contract theory. The trial court, in setting aside the judgment, observed that plaintiffs failed to make a submissible case of breach of contract, since the contract had been mutually rescinded, and the parties had agreed to hold each other harmless from further liability. Plaintiffs appealed.

■ On appeal from a judgment notwithstanding the verdict, we consider the evidence in a light most favorable to the parties receiving the verdict, giving them the benefit of all reasonable inferences that might be drawn from the evidence, and disregard any contrary evidence. *Wilson v. Missouri-Kansas-Texas R. Co.*, 595 S.W.2d 41, 44 (Mo.App.1980). Cast in that light, the facts are that Homer and Janice Dilts, residents of the state of Iowa, during a vacation visit to the Missouri Ozarks, negotiated with Forrest Lynch for the purchase of a resort owned by Lynch in Theodosia, Missouri. The complex consisted of approximately 40 rental units, a lounge, restaurant, and swimming pool. Prior to execution of the sales contract, an employee at the resort showed plaintiffs 8 or 10 of the rental units, all in reasonably good condition, and told them the remaining units were in the same condition, and that no major repairs were needed. Lynch also told them that the insurance premium on the premises was "reasonable", and that a large illuminated roadside sign advertising the premises was his.

On July 18, 1978, the parties executed a contract for sale of the property for the sum of $250,000. Mr. and Mrs. Dilts paid $25,000 as a down payment and were to sign a note, secured by a deed of trust, for the $225,000 balance, at which time a warranty deed was to be delivered to them by Lynch. The note and deed of trust were never delivered to them for execution, neither did they receive a warranty deed. The attorney for Lynch prepared the contract of sale which was executed in the attorney's office.

Plaintiffs took possession of the property on August 16, 1978, and ran into immediate problems. Only 18 of the units were rentable, as the others had rotted floors, no electricity, or badly leaking water pipes. Plaintiffs expended considerable money making repairs. Operation of the resort produced income about 50% of what Lynch had represented, the "reasonable" insurance costs approximated $8,000 a year, and Lynch's sign turned out to be rented, with plaintiffs owing monthly rental of $220.

On September 20, 1978, plaintiffs contacted Lynch's attorney and told him they wanted out of the deal. The attorney suggested a rescission and release agreement, which he prepared. The agreement reads:

"WHEREAS, on the 18th day of July, 1978, the undersigned parties entered into a contract for the sale of real estate, same being the premises known as

Lynch's Motel, Lounge and Restaurant located at Theodosia, Missouri, and

WHEREAS, the parties desire to rescind said contract and hold each other harmless from any further liability.

WITNESSETH: For value received the parties mutually agree as follows:

(A) The parties mutually rescind that certain contract, a copy of which is attached hereto and marked Exhibit "A", and the same hereafter shall be considered null and void.

(B) The parties further agree and do hereby release each other from any further liability to each other by reason of said contract.

IN WITNESS WHEREOF, the parties have executed this release on the 20 day of September, 1978."

As readily seen, the document does not mention the $25,000 down payment made by the Diltses.

The agreement was executed by all the parties. Lynch told Mr. Dilts that he would return later to purchase the remaining liquor inventory and to "settle up", which Dilts took to mean his down payment would be refunded. Lynch did not return. Plaintiffs returned to Iowa, taking with them everything (food, liquor stock, dishes, air conditioning units, etc.) they had brought from Iowa or purchased after their arrival in Missouri. Plaintiffs left the motel property in better condition than it was when they moved in. Lynch subsequently resold the motel to third parties for $250,000.

Plaintiffs then sued defendant. The case went to trial on plaintiffs' amended petition entitled "First Amended Petition in Equity." The pleading appears to be an action for actual and punitive damages bottomed on fraud in the inducement, alleging plaintiffs relied on representations made by Lynch that the motel operation grossed $570–$600 per day, that all 40 units were in a rentable condition, that the premises had a sound roof, that the business sign was included with the property, and that the insurance rates on the premises were reasonable. It further alleged that plaintiffs executed the real estate sale contract rely-

ing on the representations of Lynch and that they later found out such representations were false. The petition goes on to state that plaintiffs then advised defendant they did not wish to "purchase the property" by reason of the false representations and because defendant "failed to deliver title." The petition also stated that plaintiffs signed the rescission agreement, incorporated in their petition as an exhibit, upon the understanding their $25,000 down payment would be returned to them and that Lynch would repurchase the liquor supply, but that Lynch, after the agreement was signed, failed and refused to refund their money and repurchase the liquor. In their prayer, plaintiffs asked for money damages, including the $25,000 down payment.

Lynch filed an answer in the nature of a general denial, and affirmatively pled the rescission and release agreement as a defense. He also filed a two-count counterclaim. Count I alleged conversion and waste of his property by plaintiffs, while Count II appears to be a claim of malicious abuse of process (filing the petition after the signing of the release and rescission agreement). Lynch prayed for actual and punitive damages.

Plaintiffs' reply consisted of a general denial to the allegations of the counterclaim, and an averment that the rescission and release agreement was invalid for lack and failure of consideration, and for fraud in the inducement.

Lynch requested a jury trial. After all evidence was heard, plaintiffs abandoned their fraud claim and elected to go to the jury on a theory of breach of contract. Plaintiffs' verdict directing instruction (No. 8) authorized a verdict for plaintiffs if the jury believed that 1) Lynch did not deliver a properly certified abstract to plaintiffs within 15 days of the contract date, 2) Lynch did not deliver a warranty deed to plaintiffs, 3) because of such failures Lynch did not perform his contract duties, and 4) plaintiffs were thereby damaged. Instruction No. 5 advised the jury that plaintiffs' fraud claim had been abandoned and that they were to disregard all evidence concern-

ing any fraudulent misrepresentations by Lynch. Defendant's counterclaims were covered by appropriate instructions.

The jury returned a verdict for plaintiffs in the sum of $20,000 and verdicts for plaintiffs on defendant's two counterclaims. Judgment was entered in accordance with the jury verdicts. Thereafter, defendant filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court sustained the motion for judgment notwithstanding the verdict, and entered judgment for defendant on plaintiffs' petition and for plaintiffs on defendant's counterclaims.

In its written findings and conclusions the trial court, among other things, found that the rescission and release agreement bound the parties, that there was no fraud in the inducement or surrounding the execution of the document, and that Lynch had no obligation, either through the terms of the rescission agreement, or as established by parol evidence, to return the $25,000 down payment to Mr. and Mrs. Dilts. The trial court also observed that plaintiffs had not proved a breach of the sales contract by Lynch or proved they were damaged by such a breach.

Plaintiffs contend here that the trial court erred in setting aside their jury verdict and entering judgment for Lynch because 1) they made a submissible case on their breach of sales contract theory, and 2) they properly pleaded and proved a submissible case on a breach of the rescission and release agreement by Lynch. The second point relied on is dispositive of the issues in the case.

■ A rescission agreement is a contract. *Gee v. Nieberg,* 501 S.W.2d 542, 544 (Mo. App.1973). Plaintiffs' amended petition, though a far cry from a model pleading, alleged the execution of the rescission agreement, attached a copy of it as an

exhibit, and alleged that they executed it "... upon the belief and understanding that the defendant would return their $25,000 ...." They alleged that defendant promised to "settle", but that he did not do so, and, in their petition, in addition to other relief, asked for damages in the sum of $25,000, plus interest.

■ Although the petition's allegations as to a breach of the rescission agreement could, and should, have been more carefully drawn, they stated a cause of action for breach of the rescission agreement, as the allegations pleaded the making and existence of a valid contract, the rights of plaintiffs (the return of their money) and the obligation of defendant (the duty to return it), a violation by defendant (failure to return to "settle up"), and damages from the breach ($25,000 plus interest). *Johnson v. Great Heritage Life Insurance Co.,* 490 S.W.2d 686, 691 (Mo.App.1973).

■ As a general rule, rescission of a contract does not merely terminate it, but abrogates it in toto. *Bacon v. Boss,* 290 S.W.2d 207, 210 (Mo.App.1956). Consequently, rescission of a contract involves restoration of the status quo of the parties, unless the parties have agreed otherwise. *Kurth v. Morgan,* 277 S.W. 50, 55 (Mo.App. 1925); *Facendini v. Hillman,* 298 S.W. 1073, 1074 (Mo.App.1927).[1]

It is undisputed in this case that the parties were not restored to the status quo. Lynch did not return the $25,000 down payment. Mr. and Mrs. Dilts did not tender to Lynch the profits they made from the operation of the bar, restaurant and rental units during the time Lynch was deprived of the use of the facility. The question presented is whether the parties intended such a result. Mr. Dilts said, "All I wanted was my money back", when the lawyer for Lynch suggested the rescission agreement. Lynch says there is no way he would have signed

---

1. Some authorities hold that whether restitution is to be made on rescission of a contract depends on the agreement itself, and the surrounding facts and circumstances. 17 Am. Jur.2d, *Contracts* § 517, pp. 1003–5; Restatement of the Law (Second) *Contracts* § 283, pp. 389–392. Missouri, however, through *Kurth* and *Facendini,* appears to hold that restitution is required unless the rescission agreement makes some other provision therefor, or the parties agree to some other arrangement.

the rescission agreement if it required him to return the $25,000. The question was one of fact to be determined by the jury.

Unfortunately, the jury was not given guidance though proper instructions on this issue. Plaintiffs' verdict director concerned an alleged breach of the sales contract, not the rescission agreement. Plaintiffs had no cause of action on the sales contract, since it had been rescinded by the mutual agreement of the parties. *Schwartz v. Shelby Construction Co.,* 338 S.W.2d 781, 792 (Mo. 1960); 17A C.J.S. *Contracts* § 392, pp. 471–472.

■ It is evident in this case that plaintiffs misconceived their right or remedy when they tendered a verdict directing instruction based on the real estate sale contract, *rather than on the rescission agreement.* Under the facts of this case, justice will be better served by remanding the cause for further proceedings. *Stouse v. Stouse,* 270 S.W.2d 822, 825–826 (Mo.App. 1954); *Fieser v. Services, Inc. v. Saline Sewer Co.,* 643 S.W.2d 92, 94 (Mo.App.1982); *State ex rel. Reid v. Kemp,* 574 S.W.2d 695, 697 (Mo.App.1978).

Plaintiffs should be allowed to amend their petition to concisely state a cause of action for breach of the rescission agreeement, and defendant, by answer, should be allowed to raise such defenses and set-offs as he deems appropriate.

The order of the trial court sustaining defendant's motion for judgment notwithstanding the verdict is set aside, the judgment for defendant on plaintiffs' petition is reversed, and the cause is remanded for further proceedings consistent with this opinion. As defendant did not appeal the judgments for plaintiffs on his claims of conversion, waste, and malicious abuse of process, those judgments are affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.