SMITH, P.J., and DOWD, J., concur.

**Dana SMITH, Plaintiff-Appellant,**

v.

**Thomas MOHAN, Anita Mohan, Patrick Kalish and Sylvia Kalish, Defendants-Respondents.**

**No. 50953.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 20, 1987.

---

Rex M. Burlison, Private Atty., O'Fallon, for plaintiff-appellant.

John David Anderson, Private Atty., St. Louis, for defendants-respondents.

DOWD, Judge.

Plaintiff-purchaser appeals from the judgment of the trial court, sitting as trier of fact, in favor of defendants-vendors, denying purchaser specific performance of a residential sales contract. In the interim between execution of the sales contract and closing of the sale, the residence was substantially destroyed by fire. We affirm.

Purchaser was interested in buying a particular piece of residential property and requested the services of a real estate agent, licensed in Missouri, to assist him in putting the deal together. Purchaser offered the agent a three percent commission to act in his behalf in approaching the owner of the property and setting up a contract for sale. The agent, acting on behalf of purchaser, presented a contract offer to vendors.

Vendors and purchaser executed a standard residential sales contract on July 29, 1984. Vendors Thomas Mohan and Patrick Kalish signed the sales contract but their wives did not. Mohan testified he had no reason to believe their wives, who were also owners of record, would not go along with the sale but that he did not know it was necessary that they sign.

The contract provided for a purchase price of $19,600.00. Purchaser deposited $500.00 earnest money with the real estate company to be held in escrow. A financing contingency was included in the contract which required purchaser to obtain a written commitment for financing by August 27, 1984. Closing of the sale was set for September 7, 1984.

Because of extensive damage to the property resulting from a previous tenant,

purchaser sought to occupy the property before closing in order to make repairs. Purchaser and vendors signed an early occupancy form, placing the risk of any loss which might occur between the time of contract and the time of closing on purchaser.

On August 7, 1984, the property subject to the sales contract was destroyed by fire. The sales contract provided purchaser an option to rescind in the event the premises were destroyed by natural disaster prior to closing and could not be restored within thirty days:

> If after contract is executed, the premises be destroyed or damaged by fire, windstorm, or otherwise, seller shall restore same within thirty days if possible, and sale closing date shall be extended accordingly, but otherwise purchaser shall have option of cancelling or enforcing contract: if enforced, purchaser shall be entitled to insurance proceeds; if cancelled, earnest deposit shall be returned to purchaser less any expense incurred by or in behalf of purchaser.

The real estate agent, in a deposition admitted into evidence, testified that purchaser called him on August 8, 1984 and told him he no longer wanted the house. On August 10, 1984, the agent prepared a "release of earnest money" form. Although it was purchaser's testimony that he never requested a return of the earnest money, the agent testified he would not have prepared the form except at purchaser's request. The agent sent the form to purchaser for his signature and left a message with vendor Mr. Mohan that a copy of the release form for him to sign would be available at the realtor's office. The release forms were never signed by vendors or purchaser. The agent testified that on or about August 21, 1984, while acting on behalf of purchaser, he confirmed with vendor Mr. Mohan that purchaser wanted to cancel the purchase of the house.

The agent testified purchaser later changed his mind from his original position that he did not want to go through with the sale. According to the agent, purchaser told him he had been contacted by a fire adjustor who informed him of the possibility of acquiring the proceeds of an insurance policy covering the residence. Purchaser testified that he entered into an agreement with the adjustor whereby the adjustor would represent purchaser in an attempt to get the insurance proceeds, pursuant to the risk of loss provision of the sales contract, in exchange for a percentage of the proceeds.

Thereafter, purchaser took steps in accordance with enforcing the contract. Purchaser acquired a financing commitment for the balance of the purchase price and took action to have the financing contingency removed from the contract. Likewise, the agent testified that purchaser requested him to prepare a document to extend the closing date. Neither purchaser nor vendors ever signed this document.

The agent testified it was his understanding that purchaser did not want to go through with the sale, wanted his earnest money back, and that the sale was off as of August 10, 1984. Vendor Mr. Mohan testified it was his understanding that the sale was off as of August 19, 1984, when purchaser called him and told him he would not go through with the sale for $19,600.00.

In mid-October 1984, vendors received insurance proceeds in the amount of $20,991.98. Thereafter, vendors had the house repaired. Vendor Mr. Mohan testified the repair crew began work the first week of November 1984 and finished prior to the end of January 1985.

Purchaser brought this action on November 26, 1984, seeking specific performance of the sales contract pursuant to the risk of loss provision. On November 4, 1985, the trial court entered judgment for defendants. The parties did not request, and thus the trial court did not include, a statement of its findings of fact and conclusions of law.

Our review of this court tried case is governed by Rule 73.01 as interpreted by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), and the judgment of the trial court must be affirmed unless it is against

the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. We find there was sufficient evidence for the trial court to have concluded that purchaser had rescinded the sales contract immediately following the fire and thus was not entitled to specific performance.

Specific performance is not a matter of right and the determination of whether specific enforcement will be decreed is in the sound discretion of the trial court. *Cossairt v. Reich*, 370 S.W.2d 291, 295 (Mo. 1963). The remedy of specific performance assumes the existence of a valid contract between the parties to the action. *Keller v. Reich*, 646 S.W.2d 141, 143 (Mo.App. 1983).

"As a general rule, rescission of a contract does not merely terminate it, but abrogates it in toto." *Dilts v. Lynch*, 655 S.W.2d 118, 121 (Mo.App.1983). It follows that once a contract has been rescinded, it can be revived only by mutual assent. 17A C.J.S. *Contracts* § 392 (1963). Rescission may be shown by acts and declarations of the parties inconsistent with the existence of a contract. *Tahan v. Garrick, Inc.*, 701 S.W.2d 189, 191 (Mo.App.1985).

■ Pursuant to the terms of the contract, purchaser had the option to rescind the contract if, before closing of the sale, the premises were destroyed by natural disaster and could not be restored within thirty days. The evidence, although admittedly contradictory at times, was sufficient to establish that purchaser elected to rescind the contract. It is within the discretion of the trier of fact to determine the credibility of the witnesses, and where there is a conflict of evidence in a court tried case, the trial court has leave to believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980); Rule 73.01(c)(2).

The real estate agent testified that purchaser told him on August 8, 1984 that he did not want to go through with the sales contract. On August 10, 1984, the agent prepared a "release of earnest money" form which he testified he would not have done except at purchaser's request. It was the agent's understanding that the sale was off as of August 10, 1984. The agent testified that, acting on behalf of purchaser, he confirmed with vendor that purchaser wanted to cancel the contract of sale.

■ There was sufficient evidence for the trial court to have concluded that purchaser initially chose to rescind the contract and later sought to change his position after being solicited by a public adjuster, who informed him of the prospects of acquiring the insurance proceeds. Once rescinded, the contract could not have been revived except by mutual agreement of the parties.

■ In his first point on appeal, purchaser contends the trial court erred in failing to grant specific performance of the contract for sale because pursuant to the risk of loss provision, purchaser had no duty to elect whether to enforce or cancel the sales contract until it could be determined that vendors could not make the necessary repairs to restore the premises within thirty days. There was no question that the premises were extensively damaged by the fire. As purchaser himself testified: "[I]t was just completely demolished." When restoration of the premises was eventually undertaken, it took over two months to complete. Due to the extent of the damage, we believe it was within the trial court's discretion to have concluded that, immediately following the casualty, it was readily apparent that restoration of the premises within thirty days would be highly unlikely and that any action by purchaser to rescind the agreement was effective and binding on him.

■ In his second allegation of error, purchaser contends there could not have been an effective cancellation of the sales contract without a writing. Under the Statute of Frauds, contracts for the sale of land must be in writing. § 432.010, RSMo 1978. Purchaser contends that rescission of a contract for the sale of land must also be in writing because under the doctrine of eq-

uitable conversion, purchaser is the equitable owner of the property upon signing of the sales contract and rescission of the contract would result in the transfer of equitable title back to vendors. We follow the prevailing rule that allows executory land contracts to be rescinded orally even though the contract rescinded was one required to be in writing by the statute of frauds. *Gee v. Nieberg*, 501 S.W.2d 542, 545 (Mo.App.1973); *see also*, Restatement (Second) of Contracts § 148 comment c (1981).

Purchaser further contends the sales contract was not *wholly* executory as he deposited $500.00 with the real estate company as earnest money. The contract may no longer be wholly executory as to purchaser but it is executory as to vendors. The rule allowing oral rescission of executory land contracts contemplates the transfer of legal title before the rule is no longer applicable. *See* Restatement (Second) of Contracts § 148 comment c (1981). The rationale behind the exclusion of executed land contracts from the rule allowing oral rescission is that where legal title has been transferred, the agreement to rescind the transaction and revest title in the vendor is itself a contract for the transfer of an interest in land within the Statute of Frauds. *Id.* As the contract was executory in that legal title had not yet passed, purchaser's oral rescission of the sales contract was effective.

Finally, purchaser contends a rescission of the sales contract could not have been effective because an oral rescission of a contract required to be in writing by the Statute of Frauds must be supported by consideration. Purchaser contends there was no consideration to support the rescission and further argues that his earnest deposit was never returned to him.

 As this court recently stated, consideration can be found in the "mutual release of contractual duties." *Tahan, supra*, at 191. As to purchaser's earnest money deposit, the general rule is that the party seeking to rescind must return whatever he has received under the contract.

*Breneman v. The Laundry*, 339 Mo. 911, 87 S.W.2d 429, 432 (1935).

 Here purchaser had the option to rescind according to the terms of the contract and initially chose to exercise that right. Purchaser cannot now benefit from the fact that he changed his position and sought to enforce the contract instead of pursuing the return of his deposit. According to the terms of the contract, purchaser is entitled to return of the earnest deposit which will be available when purchaser decides to sign the real estate company's release form. Point denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and REINHARD, J., concurs.