Steven & Cynthia BLAINE,
et al., Appellants,

v.

J.E. JONES CONSTRUCTION
COMPANY, et al.,
Respondents,

Steven & Cynthia BLAINE,
et al., Respondents,

v.

J.E. JONES CONSTRUCTION
COMPANY, et al.,
Appellants.

Nos. 59307, 59308.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 29, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Nov. 5, 1992.

Application to Transfer Denied
Dec. 18, 1992.

Stefan J. Glynias, St. Louis, for appellants.

Louis Joseph Garavaglia, Jr., St. Ann, Steven W. Koslovsky, Clayton, Priscilla F. Gunn, St. Louis, John Miller, Jefferson City, for respondents.

SATZ, Judge.

This is a tort action in fraud. Plaintiffs are owners of homes in Westglen Farms Subdivision in St. Louis County. They purchased their homes from defendant, J.E. Jones Construction Company (Jones Company), the company that developed the subdivision and constructed their homes. Plaintiffs sued the Jones Company for fraud, alleging they were induced into purchasing their homes by the Jones Company's fraudulent concealment of its intent to build an apartment complex in the subdivision near their homes.

In several amended petitions, plaintiffs also attempted to establish themselves as the proper representatives of an association or of a class of other purchasers of homes in the subdivision to sue the Jones Company for fraud. The Jones Company's several motions to dismiss the relevant counts in the amended petitions were granted.

Plaintiffs also attempted to join Gordon A. Gundaker Real Estate Company, Inc. (Gundaker) as a defendant, alleging Gundaker acted as the sales agent for the Jones Company, or, in the alternative, alleging Gundaker and the Jones Company conspired to defraud plaintiffs. Gundaker's motions to dismiss the counts containing these allegations were granted.

Plaintiffs submitted their separate claims of fraud to the jury based upon fraudulent concealment. The jury returned separate verdicts for the plaintiffs and judgments were entered accordingly. The Jones Company appeals from these verdicts and judgments. Plaintiffs appeal from the court's dismissal of their representative counts, their conspiracy count and additional counts against Gundaker.

We reverse the judgments in favor of plaintiffs, affirm the court's dismissals of the noted counts, and direct the court to enter judgment in favor of the Jones Company and Gundaker.

Plaintiffs' claim of fraud against the Jones Company was based upon "fraudulent concealment", as alleged in plaintiffs' eighth and final amended petition and as submitted to the jury. Plaintiffs' contention on appeal, as it was at trial, is that the Jones Company owed them the duty to disclose its intent to build an apartment complex in their subdivision near their homes. The Jones Company's failure to disclose the plan, plaintiffs now contend, as they alleged at trial, was a "fraudulent concealment". The Jones Company responds that it did not have this duty to disclose. We agree with defendant.

### Fraudulent Concealment/Passive Nondisclosure

■ A purchaser induced into a contract of sale of land or of a chattel by the fraud of the seller may affirm the contract and sue in fraud for damages or may disaffirm the contract and sue for recission and restitution. *E.g., Denny v. Guyton*, 327 Mo. 1030, 40 S.W.2d 562, 591 (banc 1931). Whether the particular action for fraud involves land or a chattel and regardless of the remedy chosen, our courts, at times, use the same general definitions of the substantive elements of fraud and of the procedural rules governing that action. The general policy consideration cutting across all these lines is fair conduct.

■ Generally, then, in law and in equity, one of the essential elements of fraud is a false representation. *E.g., Grindley v. Blankenship*, 671 S.W.2d 393, 395 (Mo. App.1984). The false representation may be made by spoken words or meaningful affirmative conduct. *E.g., Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 954–955 (Mo.App.1991). The spoken words may be completely false or half-truths which convey or create the same impression. *E.g., Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202, 209 (Mo.App.1985). A party who speaks must speak truthfully. *Id.*

Silence or a passive failure to disclose facts is another matter. Early on, it was said that fraud will not lie for "tacit nondisclosure". Prosser and Keeton, *The Law of Torts*, § 106 at 737 (5th ed. 1984). This statement reflects the business ethic of *caveat emptor* "together with a touch of the old tort notion that there can be no liability for nonfeasance, or merely doing nothing." *Id.*

This statement has been mitigated by limitations and exceptions which almost swallow it up. Thus, we do impose a duty to disclose information where a classical fiduciary relationship exists, or, in an extension of that relationship, where one party expressly or by clear implication places a special confidence in the other. *See, e.g., Jones v. Arnold*, 359 Mo. 161, 221 S.W.2d 187, 193 (1949); *Centerre Bank of Independence v. Bliss*, 765 S.W.2d 276, 284 (Mo.App.1988); *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548, 550–551 (Mo.App.1981). The latter exception is quite often loosely characterized as a relationship where one of the parties has superior knowledge which is not within the fair and reasonable reach of the other. *See, e.g., Fairmont Foods, supra*, at 550. In these situations, the passive nondisclosure of information, one party has an affirmative duty to disclose information, and that party's failure to disclose the information serves as a substitute for the false representation element required in fraud. *Triggs v. Risinger*, 772 S.W.2d 381, 382 (Mo.App.1989); *see, also, Scott v. Hill*, 330 Mo. 490, 50 S.W.2d 110, 111 (1932). But, in these situations, the real question is, as it is here, when is there a duty to speak and disclose.

### Duty of the Jones Company/Plaintiffs' Theory of Recovery

Plaintiffs filed eight petitions in this cause, their original petition and seven amended petitions. In their original petition, as we read it, plaintiffs base their claim of fraud on alleged false representations made by the Jones Company or by its agent Gundaker. More specifically, plaintiffs allege: In July 1979, the Jones Company recorded a plan to develop the Westglen Farm Subdivision which permitted the construction of single family homes, as well as 150 multi-family units and about 6 acres of commercial units at the entrance to the subdivision. "At the time the plat was recorded, The Jones Company planned to construct commercial buildings and apartments on the tract of property at the entrance to the subdivision ...." From 1979 through 1986, however, the Jones Company, itself or through its agent Gundaker, allegedly "made representations" to plaintiffs that this tract of land "was to be common ground to the subdivision; was to be condominiums; was to be single family homes; or had not been planned for development." In 1985, the Jones Company allegedly began to construct an apartment complex on the tract in question. The Jones Company had an alleged duty to disclose "its intent to construct apartments and commercial buildings" on this tract.

This claim of fraud is clearly based upon false representations, and the claim remains the same through plaintiffs' next five amended petitions.

Then, in their "Sixth Amended Petition", plaintiffs abandon this basis for their claim of fraud and base their claim on the Jones Company's affirmative duty to disclose its alleged plan to build apartments and commercial buildings, the duty apparently being created solely by the business relationship between the Jones Company and plaintiffs. More specifically, plaintiffs make the following allegations: Plaintiffs repeat the allegations describing the Jones Company's recorded plan and its undisclosed intent to build apartments and commercial buildings. The Jones Company, plaintiffs then allege, "had a duty to disclose [to plaintiffs] its intent to construct apartments and commercial buildings or its knowledge that apartments and/or commercial buildings would be constructed at the entrance" to the subdivision. However, plaintiffs allege, no plaintiff "was ... advised of the contemplated construction of apartments and commercial development prior to purchasing [his or her] home." These identical allegations were repeated in plaintiffs last and "Seventh Amended Petition".

To us, these pleadings clearly show that plaintiffs abandoned their original theory of fraud based upon affirmative false representations and chose as their final theory a duty to disclose based upon their relation to the Jones Company. The reason for this change is not expressly discussed by the parties, and it is not readily apparent. However, paralleling this change of theory, plaintiffs were attempting to establish themselves as representatives of an association or of a class of other purchasers of homes in the subdivision. These representative actions either require common issues of law or fact, Rule 52.08(a) (class action), or representatives who will fairly and adequately protect the interests of the association and its members, Rule 52.10 (association action). The possibility that the same representations were not made to all members of the association or of the class may have caused plaintiffs to abandon their original theory and to attempt to establish the commonality required by the Rules by alleging in their final petition that the Jones Company owed the same duty to disclose information of its alleged plan to all purchasers. Plaintiffs stated this in one of their memoranda to the trial court, and tacitly admit this in their brief when they say the allegations in the petitions varied "not because they were unable to state a cause of action for misrepresentation against The Jones Company, but because of their desire to bring their claims as either an association action or a class action."

Be that as it may, plaintiffs' finally chosen and pleaded theory was based upon an alleged affirmative duty to disclose, not upon false or half-true representations. Of equal importance, each plaintiff submitted this finally pleaded theory to the jury. In their respective verdict directing instructions, the plaintiffs did not exactly follow MAI 23.05, the approved form verdict director for fraud based upon false representations, and, thus, did not submit a false representation or a half-true representation as a threshold ultimate fact; rather, each plaintiff submitted as the threshold ultimate fact the fact that the Jones Company "failed to disclose to plaintiffs ... that it would build apartments intending that plaintiffs rely on such non-disclosure in purchasing their residence, ...."

This is not to say that plaintiffs did not make a submissible case on false or half-true representations. It is to say that plaintiffs' chosen theory, the theory the Jones Company was given notice of and defended against, was the theory of an affirmative duty to disclose. Thus, the issue here is whether the Jones Company, the vendor, had the duty to disclose to plaintiffs, the purchasers, its alleged plan to build apartments which allegedly affected the market value of plaintiffs' homes at the time the homes were purchased. Assuming the Jones Company had that plan and the plan, if disclosed, would have affected the market value, the Jones Company, on the present record, did not have the duty to disclose its plan.

## The Jones Company's Asserted Duty To Speak and To Disclose

Stripped to its essentials, plaintiffs' claim is based upon the silence of the Jones Company; the silence, plaintiffs contend, of a party to the transactions more knowledgeable than plaintiffs.

To state the obvious, silence alone is neutral. But, silence can be made meaningful by surrounding facts. In the present sales transactions, no different than many other land sales transactions, the parties engaged in conversations and conduct which, either expressly or by implication, involve the representations of fact. We view those conversations and conduct surrounding and relevant to the silence of the Jones Company most favorably to plaintiffs in order to place that silence in proper context.

The Jones Company closed on their purchase of the land in question in 1978 in a "partnership" or "joint venture" with Community Federal Savings and Loan (Community Federal). The land was zoned for single family dwellings, except one portion of it was zoned for multi-family units. This is the portion of land near the subdivision's present entrance where the Jones Company began building apartments in 1985.

In 1978 and 1979, the Jones Company recorded a document known as a "Planned Environmental Unit" (PEU) with St. Louis county. A PEU reflects the possible and most beneficial development of a tract of land, such as the location of common ground and expected density averages. The PEU submitted by the Jones Company in 1978 shows most of the land in question was to be developed as single family homes, except for a portion of the land which was shown to be developed with 150 multi-family units. The PEU does not indicate whether these units were to be apartments or condominiums. The 1979 PEU, apparently, in addition, provided for commercial development. The plat of the development shown to plaintiffs, however, shows this portion of the land marked as "Future Development", nothing more.

Plaintiffs completed their respective transactions between 1979 and 1984. Early in 1985, the Jones Company sold all of its interest in the land zoned multi-family to its partner in the joint venture, Community Federal. Later that year, the Jones Company reacquired this tract and began construction of the offending apartment complex.

■ Set in this factual context, plaintiffs' specific complaint against the Jones Company's failure to disclose its intention to build an apartment complex remains a complaint against the Jones Company's passive nondisclosure. The formula developed by our courts to determine when to impose a duty to disclose on the seller in the marketplace is a not surprising formula that weighs significant factors. The formula is designed to set an operable standard of fair conduct in the marketplace. The list of factors is open-ended. Our courts, however, emphasize the relative intelligence of the parties to the transaction, the relation the parties bear to each other, the nature of the fact not disclosed, the nature of the contract, whether the concealer is a buyer or seller, the importance of the fact not disclosed and the respective knowledge and means of acquiring knowledge of the parties. *See, e.g., Fairmont Foods, supra,* 616 S.W.2d at 551–552; *Abbey v. Heins,* 546 S.W.2d 553, 557 (Mo.App. 1977); *Hanson v. Acceptance Finance Co.,* 270 S.W.2d 143, 149 (Mo.App.1954); *see, generally,* Prosser and Keeton, *supra,* § 106 at pp. 738–739.[1] These factors are articulated as separate factors for analytical purposes; in fact, they are interrelated and overlap.

■ For the purpose of our discussion, we have assumed, without deciding, that the Jones Company did intend to build apartments when plaintiffs purchased their homes; therefore, it did have superior

---

**1.** Even though these factors are used most often to determine whether the concealer had a duty to disclose some of the factors are less often used to determine whether one of the other elements of fraud was proved. Thus, in *Fair-* *mont Foods, supra,* the relative availability of the undisclosed information to the plaintiff-purchaser was used to determine whether the plaintiff had the right to rely "upon the facts as it understood them." *Id.* at 550.

knowledge of this fact. Nonetheless, we still find it had no duty to disclose that fact.

First, there is no indication that any party's intelligence was superior to another. Plaintiffs were college educated. *Compare, Abbey v. Heins,* 546 S.W.2d at 557. Second, the parties did not bear any special relation to each other beyond their status as buyer and seller. There was no evidence that a confidential relationship of any sort developed between the parties or that the parties were in a fiduciary relationship, such as executor and beneficiary of an estate, or attorney and client. The existence of such a relationship makes it more likely that a duty to disclose would be found. However, here the transactions at issue were the normal arm's length sales of homes.

Third, the nature of the fact not disclosed is an extrinsic fact, not an intrinsic defect. In sales contracts, if the vendor conceals an intrinsic defect not discoverable by reasonable care, there is a greater likelihood that a duty to disclose will be found than if the fact is something extrinsic to the property likely to affect market value. The intent to build apartments in the future is not a defect in plaintiffs' houses which is not discoverable by reasonable care, *e.g., Barylski v. Andrews,* 439 S.W.2d 536 (Mo.App.1969); rather, the intent is a fact that normally can be ascertained by reasonable inquiry. And, as will be explained in detail under the sixth factor, "materiality", the alleged false representations allegedly made by the Jones Company or its agent Gundaker is not relevant to the Jones Company's passive nondisclosure.

Fourth, the contract is an arm's length sales contract for property, it is not a release or contract of insurance where arguably, all material facts must be disclosed. Fifth, the concealer in this case is a seller. A seller is more likely to have a duty to disclose than a buyer. *E.g., Noss v. Abrams,* 787 S.W.2d 834, 836 (Mo.App. 1990).

The sixth factor is the importance or materiality of the fact not disclosed. Admittedly, a developer's intent to build apartments on nearby property could have an effect on a reasonable buyer's decision to buy a house, and, thus, intent is an important fact.[2] However, the significance of this fact is lessened by its extrinsic nature. The fact may affect the market value of the house, but is not a defect in the house itself. Moreover, the Jones Company's intent to build apartments was a decision about the use of land zoned multi-family which could have changed at any time. The actual layout of the multi-family buildings in fact did change from the time of the original PEU to the actual constructed buildings. Furthermore, a developer could reasonably expect that a potential buyer would inquire about the zoning of his and nearby undeveloped property, as well as potential uses for the undeveloped property.

We emphasize again that the issue in this case is the passive nondisclosure of the Jones Company. Plaintiffs' complaint is narrowly focused on the duty of the Jones Company to disclose its development intention. That narrow focus does not contemplate what the Jones Company or its agent may have affirmatively represented to plaintiffs. Therefore, the fact that plaintiffs did ask and may have received false representations is not relevant to our determination of whether the Jones Company had an affirmative duty to disclose.

Finally, the seventh factor is the respective knowledge of the parties of the fact and their means of acquiring this knowledge. There is no question in this case that the existence of multi-family zoning and a proposed layout of the multi-family buildings were a part of the public record. Plaintiffs and potential buyers had access to the information, and indeed plaintiff Ronck did get zoning information from St. Louis County. Admittedly, the multi-family buildings were not designated as any particular type of multi-family building.

---

2. We note that under the Restatement Torts (Second) analysis a fact must be "basic" to transaction, not just "material", to trigger a duty to disclose that fact. Restatement Torts (Second) § 551(e), comment j, k, l (1977).

Such a designation was not required by St. Louis County.

Here, again, however, the public disclosure of zoning for multi-family units puts a reasonable purchaser of a house in close proximity on notice to inquire about the type of multi-family units to be built. Indeed, plaintiffs here testified they made this inquiry.

The fact the Jones Company or its agent allegedly responded with false representations may be the factual basis for fraud based upon false representation. It is not, however, a factual basis for nor relevant to the imposition of a naked duty to disclose on the Jones Company. Plaintiffs abandoned the former theory and chose to proceed on the latter theory. The irrelevancy of the testified to false representations is exemplified in and demonstrated by plaintiffs' respective verdict directing instruction. Under those instructions, the jury could have disbelieved that any false representations were made and still found for plaintiffs merely by finding the Jones Company or its agent, Gundaker, failed to disclose the intent to build an apartment complex.

It is clear then that the respective knowledge of each party and the means of acquiring of this knowledge was not unbalanced or unfair. The zoning information was available and within the reasonable reach of the plaintiffs. It is true that public record of an undisclosed fact may not necessarily negate a party's duty to disclose, e.g., Osterberger v. Hites, 599 S.W.2d 221, 228–229; however, reasonable availability of the fact to the party claiming fraudulent disclosure still remains a factor in the analysis. E.g., Fairmont Foods, 616 S.W.2d at 550.

Quite simply, the undisclosed fact in this case, the Jones Company's intent, should not trigger a duty to disclose. The undisclosed fact was not an intrinsic defect not discoverable by reasonable care; rather, it was, under plaintiffs' chosen theory, an extrinsic fact which was discoverable by reasonable inquiry.

A developer in the marketplace should not be saddled with the duty to disclose that, as one of the available options under multi-family zoning, he intends to build apartments. The Jones Company, as any other developer, could assume, quite sensibly and rationally, that a buyer would check the public record or ask the developer or its agent to acquire information about the zoning of his and nearby property. It is not unreasonable for an innocent developer with no intent to deceive to believe that the disclosure of multi-family zoning is sufficient notice to a rational buyer of a house near a then undeveloped multi-family zone.

In addition, a developer's decision about developing is not absolute but can and probably will change depending on the marketplace. To saddle a developer with an affirmative duty to disclose these decisions as they vary would act as a straight jacket that the marketplace does not need.

Plaintiffs rely on Osterberger v. Hites, supra, to support their argument that the Jones Company had a duty to disclose. Osterberger, however, is distinguishable.

In Osterberger, the defendant sellers sold a house with knowledge of an existing deed of trust encumbering the property but without disclosing that fact to the plaintiff buyers. In Osterberger, however, there was no indication that the plaintiff's theory was a pristine duty to disclose and that, therefore, the defendants' passive nondisclosure was a breach of duty. Rather, Osterberger was a case of partial disclosure, requiring the defendants to disclose the existence of the deed of trust. Thus, in Osterberger, this Court specifically and expressly stated:

... defendant Patricia Hites, as secretary-treasurer of defendant Hites Construction Company ... prepared all the instruments involved in the transfer .... Moreover, she willingly took it upon herself to explain the contents of the instruments to plaintiffs. However, she made only a partial disclosure. In her explanation, she omitted any reference to the outstanding deed of trust .... (emphasis added).

Id. at 228.

Moreover, the transaction was done quickly, all in one day, on a Sunday, and defen-

dant Patricia Hites "was well aware that plaintiffs' lack of training and experience caused them to look to her for information, advice and guidance." *Id.* at 228.

This court found that these facts, particularly, the "plaintiffs inexperience coupled with Patricia Hites' partial disclosure" served "as a rational basis for the trial court to conclude" defendants had a duty to disclose the existence of the deed of trust. However, in the present case, plaintiffs abandoned any theory based upon partial disclosure and chose to proceed on the Jones Company's duty to disclose regardless of any disclosures or partial disclosures.

Plaintiffs, demonstrably, have chosen an incorrect theory to try their case and to submit to the jury for redress against the Jones Company. On the present record, we reverse the judgment outright and do not reverse and remand the cause to permit plaintiffs to choose another theory.

■ In Missouri, where a plaintiff has from the outset misconceived the law and has chosen a mistaken legal theory to submit to the jury for redress, we may reverse the judgment against the plaintiff and remand the cause to allow the plaintiff to plead and to submit another theory. *E.g., Stouse v. Stouse,* 270 S.W.2d 822, 825–826 (Mo.1954); *Wile v. Donovan,* 538 S.W.2d 906, 907–909 (Mo.App.1976). We do so, however, where the evidence shows the plaintiff may recover upon another theory. *Stouse* at 825–826; *Wile* at 907–909. And, we do so because the plaintiff's counsel has missed completely the appropriate theory. Simple fairness requires the plaintiff be given a meaningful day in court. *E.g., Stouse and Wile, supra; see, also, Dilts v. Lynch,* 655 S.W.2d 118, 122 (Mo.App.1983); *Fieser Services, Inc. v. Saline Sewer Co.,* 643 S.W.2d 92, 94 (Mo.App.1982).

We have also followed this procedure and reversed and remanded where a plaintiff has pleaded several legal theories, but chosen to submit the wrong one to the jury. *E.g., Katz v. Slade,* 460 S.W.2d 608, 614 (Mo.1970); *Stone v. Farmington Aviation Corp.,* 363 Mo. 803, 253 S.W.2d 810, 813–814 (1953). But, again the procedure is followed because counsel's choice was based on mistake and not made to seek a tactical or strategic advantage. *Katz* at 614. Thus, in *Katz,* the court specifically found that the plaintiff's choice was a "misadventure based upon a mistaken legal theory ... [not] abandonment ... to secure a strategic advantage." *Id.*

Thus, we do not follow this procedure where a plaintiff deliberately chooses one of several pleaded theories of recovery to submit to the jury because he believes that is to his advantage; this choice is a matter of legal strategy, not a misadventure. *E.g., Burnett v. Griffith,* 739 S.W.2d 712, 715 (Mo. banc 1987); *Quinn v. St. Louis Public Service Co.,* 318 S.W.2d 316, 323 (Mo.1958); *Smith v. St. Louis Public Service Co.,* 364 Mo. 104, 259 S.W.2d 692, 696 (banc 1953); *George v. Eaton,* 789 S.W.2d 56, 59–60 (Mo.App.1990); *Williams v. Venture Stores, Inc.,* 673 S.W.2d 480, 482 (Mo. App.1984); *Meyers v. City of Louisiana,* 637 S.W.2d 219, 222 (Mo.App.1982). "[I]t is obvious a party should not always be granted a remanding of a cause for successive trials in order that he may experiment with different theories of his adversary's liability. The latter has some rights." *Smith v. St. Louis Public Service, Co., supra,* 259 S.W.2d at 696.

In the present case, plaintiffs chose their theory for tactical or strategic reasons. As we have previously stated, from their initial petition through their "Fifth Amended Petition", plaintiffs based their claim of fraud on alleged affirmative misrepresentations made by Jones Company or Gundaker. Plaintiffs' motion for leave to amend their Fifth Amended Petition was based upon their express reason to "remove obstacles to [class] certification." Then, after being granted leave, plaintiffs abandoned their theory of fraud based upon affirmative representations and relied completely on allegations of defendants' passive nondisclosure. We find no reason, in logic, law or equity to allow plaintiffs further opportunity "to experiment with different theories of [defendants'] liability." *Smith, supra,* 259 S.W.2d at 696.

*Plaintiffs' Appeal*

In their petition, plaintiffs, apparently, base defendants' duty to disclose not solely upon defendants' common law duty but also on an alleged duty imposed on defendants by the zoning ordinance in question, St. Louis County Ordinance 8452. Plaintiffs alleged and now contend the ordinance required defendants to deliver a copy of the ordinance to each purchaser of a home in the subdivision. At trial, the court excluded the ordinance from evidence, and also excluded the testimony of plaintiffs' expert, Mr. Gary Crabtree, proffered to explain the correct meaning of the ordinance. As previously noted, plaintiffs' respective verdict directing instructions do not expressly show the basis of defendants' alleged duty to disclose. Thus, to assure plaintiffs a complete review, we address plaintiffs contentions that the court improperly excluded the ordinance and Mr. Crabtree's testimony.

■ "The primary object of statutory interpretation is to ascertain the intent of the legislature from the language used, and to give effect to that intent. In doing so we consider the words used in their plain and ordinary meaning." *State ex rel. Lack v. Melton,* 692 S.W.2d 302, 304 (Mo.banc 1985); *Community Fed. Sav. & Loan v. Director of Rev.,* 752 S.W.2d 794, 798 (Mo. banc 1988); *State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 314 (Mo.App.1985). Provisions of the entire legislative act must be construed together, and, if reasonably possible, all provisions must be harmonized. *Community Fed. Sav. & Loan v. Director of Rev.,* 752 S.W.2d at 798; *State ex rel. Lebeau v. Kelly,* 697 S.W.2d at 315. We presume the legislature intended a logical result, not an absurd or unreasonable result. *Id.; see, State ex rel. Lack v. Melton,* 692 S.W.2d at 304.

The ordinance provides, among other things, that development of the tract may proceed subject to certain conditions. The first condition is that 564 residential units, of which a maximum of 150 may be multifamily, may be developed on the tract. Other conditions include, for example, a Final Development Plan showing such information as the arrangement of single family lots; and the location of multi-family buildings, storm water detention areas, and roadways must be submitted to the Planning Commission for approval prior to construction. The Final Development Plan must adhere to a list of specific design criteria, such as minimum front yard space and lot size. Prior to obtaining a building permit, requirements of the Metropolitan Sewer District and the St. Louis County Department of Highways and Traffic must be met. A list of conditions to be followed during construction are provided, including adequate provisions for ground cover, the proper handling of storm water, a prohibition of outdoor incineration, and adequate provisions for parking for construction employees. The conditions are to be enforced by the Zoning Enforcement Officer of St. Louis County.

■ The provision of the ordinance at issue here is paragraph 14, which provides:

Any transfer of ownership of lease of property shall include in the transfer or lease agreement a provision that the purchaser or lessee agrees to be bound by the conditions herein set forth and included in the approved development plan for the property. A copy of all the above conditions shall be furnished by the owner or petitioner to the operator(s), owner(s), or manager(s), including successive operator(s), owner(s), or manager(s), who shall forward to the Zoning Enforcement Officer an acknowledgement that he or she read and understood each of these conditions and agrees to comply therewith.

Plaintiffs allege in their petition and contend on appeal that paragraph 14 obligates the Jones Company to provide individual home purchasers a copy of the ordinance. The trial court excluded the ordinance after concluding as a matter of law that paragraph 14 "was calculated to deal with the purchase or sale by the owner of the property to another potential developer of the subdivision", not an individual home purchaser. We agree.

The ordinance itself clearly shows the legislative intent. The purpose of the ordinance is to insure that the tract is developed in accordance with the ordinance con-

ditions and Final Development Plan approved by the Planning Commission. This is evidenced by the conditions outlined in the ordinance which strictly control the actual construction and development of the tract. In addition, provisions for enforcement of these conditions are provided specifically in the ordinance.

Paragraph 14 insures that purchasers or lessees of the tract will also be bound by the conditions in the ordinance. This is evidenced by the requirement in paragraph 14 that the purchaser or lessee must expressly agree in the transfer or lease agreement to be bound by the conditions. In addition, the "operator(s), owner(s), or manager(s)" must receive a copy of the ordinance conditions and must notify the Zoning Enforcement Officer that he or she will comply with the conditions.

Paragraph 14 does not require that a copy of the ordinance must be furnished to individual home purchasers. The conditions in the ordinance have no meaning if applied to individual home purchasers. Individual home purchasers are not involved in the actual construction and development of subdivision property. There is no reason to require individual home purchasers to agree to be bound by and comply with conditions concerning such construction and development. Indeed, it is unclear how a home purchaser would go about complying with the conditions. Paragraph 14 is to insure that other persons involved in the construction and development of the subdivision are aware of and agree to comply with the conditions of construction and development.

Plaintiffs contend on appeal that the use of the term "owner(s)" is unambiguous and includes individual home purchasers. Plaintiffs base their argument on basically four points: (1) that the term "owner(s)" is not expressly restricted to purchasers of the entire subdivision; (2) paragraph 14 applies to "any transfer" of ownership; (3) "owner(s)" is plural, indicating that the statute contemplates the sale of portions of the subdivision; and (4) some of the conditions standing alone could affect single family home purchasers.

Plaintiffs interpret the meaning of the ordinance by focusing solely on the language of paragraph 14 out of context. The issue is not whether the language in paragraph 14 of the ordinance is expressly restricted to purchasers of the entire subdivision, or whether an individual homeowner could be affected by a condition, but, rather, whether in the context of the entire ordinance, paragraph 14 applies to individual home purchasers. The intent of the legislature was to insure proper construction of the tract. In keeping with this purpose, individual home purchasers were not contemplated by the term "owner(s)" in paragraph 14 of the ordinance.

### Mr. Crabtree's Testimony

 Regardless of the propriety of the use of an expert to interpret an ordinance and regardless of Mr. Crabtree's qualification to do so, his interpretation was not needed. The meaning of the ordinance is plain and clear; and, therefore, the trial court did not err in excluding his testimony.

Extrinsic evidence is used to interpret legislative intent only when the meaning of the statute is ambiguous. *E.g., State ex rel. Maryland Heights Fire Protection Dist. v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987); *Commerce Bank v. Mo. Div. of Finance,* 762 S.W.2d 431, 433 (Mo. App.1988). When the language of a statute is plain and admits of but one meaning, the court construes the statute as it stands giving effect to it as written. *State ex rel. Missouri State Bd. for Healing Arts v. Southworth,* 704 S.W.2d 219, 224 (Mo. banc 1986). Language in a statute is clear and unambiguous when the terms are plain and clear to one of ordinary intelligence. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988).

### Dismissal of Counts

Plaintiffs also contend the trial court erred in dismissing Counts V, VI and VII for failure to state a claim. We disagree.

To determine whether plaintiffs did state a claim in each of these counts, we review the allegations in the counts liberally and

most favorably to plaintiffs. *E.g., Shapiro v. Columbia Union Nat'l. Bank & Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978). Our pleading principles may abolish the technicalities of pleading; however, they do not abolish the need for clear thinking and clarity. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 867 (Mo.App.1985).

### Counts V and VI

Count V is a claim of fraudulent concealment against defendant Gundaker. Plaintiffs allege that Gundaker was an agent of the Jones Company, had knowledge of the contents of the zoning ordinance, and knew of the Jones Company's intent to build apartments "and/or" commercial buildings on the property. Plaintiffs further allege that Gundaker had a duty to disclose to plaintiffs the content of the zoning ordinance and the Jones Company's intended use of the property; Gundaker allegedly breached this duty by not disclosing either.

Count VI is a claim of negligence against defendant Gundaker. Plaintiffs allege that Gundaker failed to exercise reasonable care and competence by failing to advise its sales agents of its duty to disclose the contents of the zoning ordinance to plaintiffs and in failing to insure that the contents of the ordinance were disclosed to plaintiffs.

The duty of Gundaker to disclose the zoning ordinance and the Jones Company's intended use of the property, as alleged in Count V and Count VI, is based on Gundaker's status as an agent of the Jones Company. As already demonstrated, the Jones Company, on the present record, does not have the common law duty to disclose to plaintiffs the intended use of its property, nor does the ordinance in question impose a duty on it to disclose to plaintiffs the contents of the zoning ordinance.

Since a duty to disclose on behalf of the principal was not established at trial, it follows that the alleged duties of the agent derived from the principal would also not have been established. Plaintiffs have not shown us why Gundaker, as agent, or any agent in general, has a duty beyond that of its principal. Furthermore, plaintiffs do not contend that the ordinance is particularly applicable to Gundaker, or that Gundaker has superior knowledge of a fact beyond that of the Jones Company.

### Count VII

Count VII is a claim of civil conspiracy against the Jones Company and Gundaker. Plaintiffs allege that both defendants agreed to defraud plaintiffs by "failing to advise plaintiffs of the anticipated development of apartments and commercial buildings" on the property in question.

A civil conspiracy is an agreement between at least two persons to do an unlawful act, or to use unlawful means to do an act which is lawful. *Ritterbusch v. Holt*, 789 S.W.2d 491, 494 (Mo. banc 1990); *Royster v. Baker*, 365 S.W.2d 496, 499 (Mo. 1963). An alleged conspiracy is not of itself actionable, some unlawful act must have been done by one or more of the conspirators. *Royster v. Baker*, 365 S.W.2d at 500; *Bockover v. Stemmerman*, 708 S.W.2d 179, 182 (Mo.App.1986). The "fact of a conspiracy merely bears on the liability of the.... defendants as joint tortfeasors." *Royster*, 365 S.W.2d at 500; *Bockover*, 708 S.W.2d at 182. Thus, if the underlying act was not unlawful, there can be no claim for civil conspiracy. *E.g., Royster*, 365 S.W.2d at 500–501; *Bockover*, 708 S.W.2d at 182.

Here, the alleged underlying act was not unlawful. The underlying unlawful act in Count VII was the alleged decision by the Jones Company and Gundaker not to disclose to plaintiffs the Jones Company's intent to build apartments and commercial buildings on the property. As demonstrated, neither defendant had a duty to disclose this information to plaintiffs; therefore, the lack of disclosure was not unlawful.

### Additional Contentions of Plaintiffs

Plaintiffs also contend the trial court erred in precluding them from bringing this action as a representative action, either as a class or an association. They also contend the court erred in excluding plaintiffs' evidence of consequential damages and in not submitting those damages to the jury. In addition, plaintiffs contend the

court erred in excluding the testimony of an expert about the effect of the apartment complex on the value of plaintiffs' homes.

We have held that plaintiffs chose the wrong theory for tactical or strategic purposes. We will reverse the judgment in plaintiffs' favor on this ground and will not remand this cause for further proceedings. Thus, plaintiffs' additional contentions are not only moot, they will not arise again in a retrial of this cause.

Judgment in plaintiffs' favor reversed. The trial court's dismissal of plaintiffs' counts affirmed. The court is directed to enter judgment in favor of the Jones Company and Gundaker.

CRANDALL, P.J., and PUDLOWSKI, J., concur.